## STATE *v.* RANDOLPH

### No. 2719

January 22, 1926. 242 P. 697.

1. HOMICIDE—EVIDENCE HELD TO SHOW WILLFUL, DELIBERATE, AND PREMEDITATED DESIGN TO KILL.

Evidence *held* to show a willful, deliberate, and premeditated design to kill, warranting conviction of first degree murder under Stats. 1919, c. 248.

2. HOMICIDE — INSTRUCTION DISTINGUISHING FIRST AND SECOND DEGREE MURDER HELD NOT ERRONEOUS.

Instruction as to distinction between first and second degree murder *held* not erroneous.

3. HOMICIDE—RULE OF EJUSDEM GENERIS HELD NOT APPLICABLE UNDER STATUTE ENUMERATING ACTS CONSTITUTING FIRST DEGREE MURDER.

That Stats. 1919, c. 248, provides that all murders perpetrated by means of poison, lying in wait, torture, or any other kind of willful, deliberate, and premeditated killing, shall constitute first degree murder, does not require application of doctrine of ejusdem generis so as to render applicable only to acts of same general nature or class as those enumerated.

4. HOMICIDE—NEW TRIAL FOR NEWLY DISCOVERED CUMULATIVE EVIDENCE PROPERLY REFUSED.

New trial for newly discovered evidence as to defendant's mental condition before assault on deceased *held* properly refused, where last person to see defendant before assault testified as to his condition.

See 29 C. J. sec. 79, p. 1105, n. 41; 30 C. J. sec. 538, p. 294, n. 95; sec. 641, p. 396, n. 23; sec. 687, p. 435, n. 22.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

John H. Randolph was convicted of murder in the first degree, and he appeals. **Affirmed with direction. Rehearing denied.** (SANDERS, J., dissenting.)

*A. Grant Miller,* for Appellant:

Express malice was not proved. If malice can be implied, killing is murder; if not, manslaughter. When homicide is proved, presumption is that it is in second degree. If state would elevate it to first degree it must show characteristics of that degree; if defendant would reduce it to manslaughter, burden is on him. State v. Melvern, 72 P. 489.

Malice aforethought and premeditation have often been confused. Intention may be instantaneous as successive thoughts of mind, but premeditation implies reflection for some appreciable time, else how does it differ from sudden heat of passion, which is characteristic of manslaughter? Malice may be presumed, intention may be inferred, but deliberate design must be proved. Cases holding malice and premeditation may be presumed from class of weapons used are not applicable here. Henning v. State, 55 Am. Rep. 756; 13 R. C. L. 742.

Murder in second degree has all elements of murder in first degree except deliberation. State v. Darling, 97 S. W. 592.

To constitute first degree, killing must be deliberate and premeditated. State v. Hunt, 47 S. E. 49.

Long period of habitual intoxication or narcotic stupefication may extenuate. Instant condition to such degree that nonresponsibility can be predicated will preclude any presumption of premeditated design. It was error to deny application for new trial on ground of newly discovered evidence showing such condition. People v. Gerdvine, 104 N. E. 129; Cooke v. State, 35 S. 665; Rev. Laws, 6282; Roberts v. People, 19 Mich. 423.

There is grave doubt as to exact cause of death. Most likely cause is blood clot on brain caused by fall to floor, not blow of fist.

*M. A. Diskin*, Attorney-General; *L. D. Summerfield*, District Attorney, and *H. L. Heward*, Assistant District Attorney, for state:

Express malice was clearly proved. Defendant said, "I will kill you. I will kill you," while beating his prostrate mother.

In this state, premeditation and deliberation do not have separate meanings, but are synonymous. State v. Lopez, 15 Nev. 407. They may be inferred from circumstances of crime where facts show, as matter of logic, deliberate intent. Decision on question is peculiarly

within province of jury. 1 Wharton Criminal Law (11th ed.), sec. 507; 30 C. J. 142; 13 R. C. L. 768; State v. Millian, 3 Nev. 409.

"Any other kind of willful, deliberate and premeditated killing" is totally separate classification from "all murder which shall be perpetrated by means of poison, etc.," and principle of ejusdem generis does not apply. 29 C. J. 1105; People v. Vinunzo, 180 N. W. 502.

Applications for new trials on ground of newly discovered evidence are viewed with suspicion. Such applications are not granted as matter of right, but lie in sound discretion of court. Such evidence must in fact be new, not merely cumulative or impeaching. Due diligence must be shown. State v. Wilberg, 45 Nev. 192; Stats. 1917, 423; 16 C. J. 1182.

To render slayer guiltless of higher degree, intoxication must have made him utterly incapable of forming intent. If person has any intent or does any premeditating, he is guilty of higher degree. Case of People v. Leonardi, 38 N. E. 372, holding there need not be entire lack of intent represents minority view. How can there be a fractional part of an intent? Condition of mind merely excited by intoxicating drink yet capable of forming specific intent is distinguished from such prostration of faculties as renders forming of intent impossible. State v. Johnny, 29 Nev. 203; 16 C. J. 108; 29 C. J. 1060.

Insanity in this state is affirmative defense to be proved by defendant by preponderance of evidence. State v. Lewis, 20 Nev. 333. Burden of proving mitigation is on defendant. Rev. Laws, 6399.

## OPINION

By the Court, COLEMAN, C. J.:

John H. Randolph was convicted of murder in the first degree. A motion for a new trial having been denied, he has appealed from the sentence inflicting the death penalty and from the order denying his motion for a new trial.

Three points have been made to support the contention

that the judgment and order should be reversed, viz.:
First, that the trial court erred in instructing the jury
as to the distinction between first and second degree
murder; second, that the verdict is contrary to the evidence; and third, that a new trial should have been
granted because of newly discovered evidence.

The evidence shows that the defendant is a man about
45 years of age; that he had long been addicted to the
use of drugs, and on two or three occasions had been
committed for treatment for the habit. It further
appears from the testimony that on or about the night
of June 30, 1925, he was residing with his mother in
Reno, Nevada, and about 1:30 a. m. went home in an
intoxicated condition and was helped into the house by
one Gaffney; that he found his way into his mother's
room where she was in bed; that he requested her to
get up and make him a cup of coffee, and was told that
she was sick and could not do it. He then requested
her to get up and help him undress for bed, to which she
replied that she was too sick, but she finally started to
get out of bed to help him, at a moment when he began
to use vile language toward her, whereupon she threw
a glass of water in his face. He then assaulted her,
knocking her down. He then jumped on her and caught
her by the throat and was in the act of choking her,
declaring, "I will kill you; I will kill you," when roomers
in the house came in and pulled him off. His mother
was a woman weighing about 350 pounds and was
between 70 and 75 years of age. At the request of the
mother, the police were called. When they arrived, he
went to his mother and asked her to tell them it was
all a mistake. She replied, "Not this time." She was
removed to a hospital, where she died three days later,
the autopsy showing several bruises about the head and
body. It appears he had kicked her in the abdomen.
The immediate cause of death was the injuries received
on the head.

The only evidence introduced in behalf of the defendant was that going to show his years of dissipation
and the effect thereof upon his physical and mental

condition. There was no evidence to the effect that he was, or had ever been, insane.

**1.** We will first consider the second contention. Our statute defines murder to be the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which it may be occasioned. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature which is manifested by external circumstances capable of proof. In 1919 the legislature enacted:

"Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart. All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery, or burglary, or which shall be committed by a convict in the state prison serving a sentence of life imprisonment, shall be deemed murder of the first degree." 1919 Stats. p. 468.

Counsel for defendant concedes that malice might have been implied by the jury but contends, as we understand him, that it must have been proven that the killing was willful, deliberate, and premeditated before the jury could have been justified in bringing in a verdict of murder of the first degree, and that there was no such proof. Just how counsel thinks deliberation and premeditation should be proven is not made clear. One thing is evident, however, and that is, if we accept his theory, proof of deliberation and premeditation could never be made in a case depending entirely upon circumstantial evidence. But it does not seem that it should be necessary to determine his contention, for it seems there is positive evidence in this case of a willful, deliberate, and premeditated design to kill. Defendant assaulted his mother, kicking her in the abdomen and knocking her down, got upon her, and while in the act of choking her, said, "I will kill you; I will kill you."

This utterance, we must presume, was the expression of his real design. His mother died three days later as the result of his misconduct. To us it seems that no clearer case of willful, deliberate, and premeditated design to kill can be conceived. It is true that the immediate cause of death was the blows on the head, but the assault continued up to the moment the defendant was pulled off of the deceased, and his utterances during the making of the assault showed the state of mind of the defendant.

2. We will now take up the contention that the court erred in giving instruction No. 2, which reads:

"The court instructs the jury that, in dividing murder into two degrees, the legislature intended to assign to the first, as deserving of greater punishment, all murders of a cruel and aggravated character, and to the second all other kinds of murder, which are murder at common law, and to establish a test by which the degree of every case of murder may be readily ascertained. That test may be thus stated: Is the killing willful (that is to say, intentional), deliberate, and premeditated? If it is, the case falls within the first, and, if not, within the second, degree. There are certain kinds of murder in which the legislature makes the malice which is implied from the circumstances of the killing, whether voluntary or not, to stand in the place of that express malice—the deliberate intention unlawfully to take away the life of a fellow creature—which is, in all other cases, essential to the crime of murder in the first degree; these the legislature has enumerated in the statute, and has taken upon itself the responsibility of saying that they shall be deemed and held to be murder of the first degree. These cases are of two classes: First, where the killing is perpetrated by means of poison, etc.; the second is where the killing is done in the perpetration, or attempt to perpetrate, some one of the enumerated felonies. Where the case comes within either of these classes, the test question, 'Is the killing willful, deliberate, and premeditated?' is answered by the statute itself, and the jury have no option but to find the prisoner

guilty in the first degree. Hence, so far as these two cases are concerned, all difficulty as to the question of degree is removed by the statute. But there is another and much larger class of cases included in the definition of murder in the first degree, which are of equal cruelty and aggravation with those enumerated, and which, owing to the different and countless forms which murder assumes, it is impossible to describe in the statute. In this class the legislature leaves the jury to determine, from all the evidence before them, the degree of the crime, but prescribes for the government of their deliberation the same tests which have been used by itself in determining the degree of the other two classes, to wit, the deliberate and preconceived intent to kill. It is only in the latter class of cases that any difficulty is experienced in drawing the distinction between murder of the first and murder of the second degree, and this difficulty is more apparent than real. The unlawful killing must be accompanied with a deliberate and clear intent to take life in order to constitute murder of the first degree. The intent to kill must be the result of deliberate premeditation. It must be formed upon a preexisting reflection, and not upon a sudden heat of passion sufficient to preclude the idea of deliberation. There need be no appreciable space of time between the intention to kill and the act of killing; they may be as instantaneous as successive thoughts of the mind. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation, and premeditation on the part of the slayer; and, if such is the case, the killing is murder in the first degree, no matter how rapidly these acts of the mind may succeed each other, or how quickly they may be followed by the act of killing."

3.   In the case of State v. Harris, 12 Nev. 414, a very similar instruction was given, and, though a portion of it was criticized, it was not held erroneous. The instruction in the instant case was drawn to meet the criticism in the Harris Case. The instruction was again assailed in State v. Hymer, 15 Nev. 49, and in State v. Gee Jon,

46 Nev. 418, 211 P. 676, 217 P. 587, 30 A. L. R. 1443, in each of which it was held that the instruction was not prejudicial. It is settled in this state that such an instruction is not erroneous, and we decline to consider the matter further. In this connection we may state that, though it does not seem to be made as a real ground for reversal of the judgment, something is said to the effect that, under the rule of ejusdem generis, the portion of the statute which provides, "All murder which shall be perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing," is limited to murder committed by means of poison, lying in wait, or torture. Such is not the law. The correct rule is stated in 29 C. J. 1105, as follows:

"The fact that the statute provides that all murders which shall be perpetrated by means of poison or lying in wait or any other kind of willful, deliberate, and premeditated killing shall constitute murder of the first degree does not require the application of the doctrine of ejusdem generis so that it shall be construed as applicable only to acts of the same general nature or class as those enumerated."

See, also, People v. Vinunzo, 212 Mich. 472, 180 N. W. 502; People v. Bealoba, 17 Cal. 389; Com. v. Jones, 1 Leigh (28 Va.), 598.

4. Did the court err in refusing to grant a new trial upon the ground of newly discovered evidence? We think not. The evidence sought to be introduced goes simply to the mental condition of the defendant some time prior to the assault, ranging from two hours and a half to a few minutes. At most this evidence could be only cumulative, since the witness Gaffney was the last person to see the defendant prior to the making of the assault and he testified to the condition of the defendant when he helped him into the house. The ruling of the trial court was right.

No error appearing, it is ordered that the judgment and order appealed from be affirmed, and that the district court make the proper order for carrying into

execution by the warden of the state prison the judgment rendered.

DUCKER, J.:   I concur.

SANDERS, J., dissenting:

This homicide was unusual, because of the relations of the parties and the character of the deed. It was matricide; *i. e.,* the murder of a mother. The defendant did not deny the killing, but interposed and sought to establish the defense of toxic insanity, brought about by the long continued use of morphine and alcoholic stimulants, combined with a chronic case of syphilis.

The jury having found the defendant mentally responsible for his act, the only question for their determination was the degree of the crime; yet I observe from this record that, when the jury retired to consider the case, they were given 27 instructions and 7 forms of verdicts; why, I do not understand. A more ragged record in a capital case has never reached this court.

Bare proof of an unlawful killing does, it is true, establish prima facie a case of murder, but only murder in the second degree. If the state demands a verdict of murder of the first degree, the burden is upon it to prove beyond a reasonable doubt some facts or circumstances from which it may be rationally inferred that there was on the part of the defendant a deliberate purpose to take the life of the deceased. The question of the degree of the crime is exclusively for the jury, and their determination will not be disturbed when there is any evidence to support it. I shall therefore, confine myself to a discussion of the single question of the sufficiency of the evidence to establish murder of the first degree.

In a case of homicide, the relations existing between the parties are worthy of much consideration. Undoubtedly where the party slain is a parent (particularly a mother), or some near friend or relative, and no particular cause for the act is assigned, it raises a fair presumption that it was due to insane impulse or misadventure.   Dean's Medical Jurisprudence, 577; Wharton's Crim. Law (11th ed.), sec. 158. "The mere

motiveless destruction of life can with difficulty be
regarded as the act of a sane mind." We look in vain
for a motive on the part of this defendant to take the life
of his mother. The jury, in finding the defendant guilty
of murder in the first degree, obviously ignored the rela-
tions of the parties, and apparently were not influenced
by the fair presumption that his act was the result of
an insane impulse, but, on the contrary, must have
inferred from his violence, taken in connection with his
exclamation, "I will kill you; I will kill you," that he
designed to effect the death of his mother. Such I con-
cede might be the natural inference in the absence of
surrounding circumstances repelling the idea.

The relations between the parties were such that they
occupied the same room in the lodging or rooming house
owned and conducted by the deceased in Reno, Nevada.
The defendant was unfit for any employment, and was
supported by his mother. The evidence tends to show
that he was a physical wreck. We know nothing of their
mode of living, but the inference is that the defendant
was, in fact, a man child. He came home in the early
morning hours of June 30, 1925, in such an intoxicated
condition that he had to be assisted into the house and
to his room, where he was left on a couch. His mother
refused to get up and make him a cup of coffee and to
undress him for bed, and, because of his abusive epithets,
threw a glass of water upon him; she then started to
call for help. The defendant in a temper struck her a
blow on the head with his fist that knocked her to the
floor. He then beat and kicked her. Neighboring
roomers hearing a noise emanating from the room
entered and found the defendant with his knees upon
his mother's stomach and his hands to her throat,
exclaiming, "I will kill you; I will kill you." The mother
died on the 2d day of July, 1925.

Assuming this account as given by the deceased to a
third party of the assault made upon her by the defend-
ant was true, and that it was properly admitted in evi-
dence, a question upon which I express no opinion, the

inference is irresistible that the killing was the result of an insane impulse or of the unusual and unnatural excitement under which the defendant labored. The defendant used no weapon; all he did to the deceased was with his fists and feet. Undoubtedly the act was cruel and malignant, but, in my opinion, there is absolutely no evidence from which it can rationally be inferred that there was any deliberate intention on the part of the defendant to take the life of his mother. The testimony of the autopsy surgeon shows that death was caused from a hemorrhage on the brain produced by some blunt force which caused a shaking of the brain, enough to tear one of the blood vessels. There was no fracture of the skull and no marks on the head. There were, however, a number of blue spots on the body, and both lids of the left eye were discolored.

It is argued that the blow with the fist followed by beating and kicking, taken in connection with the exclamation, "I will kill you; I will kill you," warranted the jury in finding the existence of deliberation. I am of opinion that under the circumstances this exclamation, instead of being indicative of deliberation, accentuates the fact that the defendant was laboring under a frenzy produced by anger.

I concede that "uncontrollable or irresistible impulse," beginning on the eve of the criminal act and ending with its consummation, has no legal standing as a defense to crime; but it should be remembered that, while "irresistible impulse," the mind being sane, is no defense to crime, yet violent passion is to be taken into account as a mitigating element, since the law treats assaults committed in hot blood as of a lower grade than those committed deliberately. Wharton & Stille's Med. Jur. (5th ed.), vol. 1, sec. 194. Evidence of circumstances of provocation, as tending to arouse passion, is admissible in mitigation of the crime under certain conditions as to disprove premeditation. This is especially so where it is not certain whether accused designed to effect the death of deceased and his act was not one

likely to cause death. 30 Corpus Juris, 224, sec. 456. I concede that there was no provocation in this case sufficient to excite a rational or sane person to do an unlawful act; but, however trivial the provocation, may have been, the defendant in a frenzy of anger made a cruel and malignant assault upon his mother, whom it was his duty to shield and protect. Every fact and circumstance attending the killing, in my opinion, refutes the state's position that the law may infer deliberation from the peculiar cruelty of the deed, and takes this case without the rule established by those extreme cases cited by Wharton in support of the text that a killing under circumstances of great atrocity warrants an inference of malice, premeditation, and deliberation. Wharton on Homicide (3d ed.), sec. 151. Under a statute which divides murder into two degrees I have been unable to find a case like the present where the accused was convicted of murder in the first degree.

There is another view which may, and I think should, be taken of this case. The defendant's life from childhood was before the jury. I shall not review it. Suffice to say that from youth on the defendant wandered through life in both "moral and intellectual darkness," making his own path. For twenty years prior to the homicide he was a confirmed morphine fiend. He had been twice committed to the Nevada State Hospital for Mental Diseases for having narcotic drugs in his possession, once in 1922 and once in 1924. It is conceded that for three or four years prior to the homicide he was an habitual user of intoxicating liquors, ostensibly of bootleg manufacture, commonly conceded to be a predisposing cause of toxic insanity. For the past ten years the defendant had been treated intermittently for syphilis. It is true the state, in rebuttal, produced evidence tending to show that the defendant at the time of the homicide was mentally responsible for his act, but the fact that he was so responsible did not make the killing murder of the first degree. Morphine, alcohol, and syphilis have much to do with the genisis of all

forms of mental disease. True, the mere use of morphine or alcohol is no excuse for crime, but it must be conceded that the long-continued use thereof produces serious disturbances of the central nervous system. Mental derangement is a common effect of the long-continued use of these poisons, and crime is its unfortunate accompaniment. See discussion of "toxic insanities" in "A System of Legal Medicine" (Hamilton and Others), vol. 2, 205.

If it be conceded that one afflicted as the defendant was never loses the power to distinguish between right and wrong, and is at all times master of himself and may control his actions, still his mind may be enfeebled, and the power of his will weakened, so that he will readily yield to the influence of the least and most trivial provocation without that willful, deliberate, and premeditated malice which is essential to constitute murder in the first degree. Anderson v. State, 43 Conn. 526, 21 Am. Rep. 669. Conceding that this defendant could distinguish between right and wrong, still the best evidence that his mind was enfeebled and his will weakened by disease is that, without any sufficient provocation, justification, or excuse, he committed an act of violence upon his mother which resulted in her death. If there is no mental disease, one who commits a homicide in a frenzy produced by anger, although he may be unable to control himself, is fully responsible for the homicide. 29 Corpus Juris, secs. 16, 1056. But, in a case like the present, where the accused is shown to be afflicted with disease which leads to a degeneration of the entire nervous system and to mental imbecility, the jury, in fixing the degree of the crime, should make allowance for his enfeebled mind and weakened will.

Upon a careful consideration of all the evidence, I am of opinion that it did not warrant the jury in finding the existence of the deliberation and premeditation necessary to constitute the highest degree of felonious homicide. I therefore register my dissent from the order directing the court below to make the proper order

for carrying into effect the judgment sentencing the defendant to the lethal chamber.

### ON PETITION FOR REHEARING
March 2, 1926.