JOHN ROBERT JACKSON, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 4932

March 18, 1968 438 P.2d 795

[Rehearing denied April 10, 1968]

*Samuel B. Francovich,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, *Virgil D. Dutt,* Deputy District Attorney, Washoe County, for Respondent.

# OPINION

By the Court, ZENOFF, J.:

John Robert Jackson was convicted for the murder in the first degree of Robert England and was sentenced to life imprisonment with the possibility of parole.

Jackson and Rebecca Jackson were married in 1956, shortly thereafter divorced, but later remarried in 1957. The couple had considerable marital problems, most of which stemmed from Jackson's drinking. There were occasional separations leading to another divorce in July 1964.

At the time of the last divorce Rebecca was employed as a waitress in a coffee shop in which England was a frequent customer. On the evening of August 7, 1964 Rebecca and England went out on a date. Jackson, who had been drinking intermittently throughout the course of that evening, called Rebecca's house to inquire if she was there. The babysitter for the Jackson's eight-year-old daughter informed him that Rebecca was not there. Later Jackson came over to the house, stated to the babysitter that he wanted to see Rebecca and the little girl. The babysitter refused him admittance because Rebecca was not there and the little girl was sleeping, so he left the house. Shortly thereafter Rebecca and England returned about 1:00 a.m. and had just driven up to the house when Jackson again drove past Rebecca's place. Seeing Rebecca and England sitting in England's pickup truck in front of the house, Jackson approached the vehicle on the driver's side and opened the door. It is not clear whether Jackson pulled England from the seat or whether England got out voluntarily, but in any event a fight ensued and Jackson was knocked to the ground. He got up, went to his auto, picked up and loaded a deer rifle taken that morning from a roommate's closet and returned pointing the weapon at England. England, saying that he didn't know what "this was all about," sought protection behind a telephone pole when he was shot in the back. He died two weeks later.

Rebecca witnessed the shooting, ran to the house with Jackson following and pleading for entry. Neighbors summoned the police and held Jackson at bay until they arrived. A brief scuffle preceded his arrest and handcuffing by the police. After

England's death Jackson was charged with murder, a violation of NRS 200.030, tried and convicted, and this appeal follows.

1. The appeal is directed principally to Jackson's defense that because he was intoxicated, despondent and jealous his state of mind was such that he could not be guilty of the murder at all by reason of insanity, or alternatively, that he was guilty of a lesser offense, either second degree murder or voluntary manslaughter. In this state it is well-recognized that in a prosecution for murder evidence of the intoxication of the accused is relevant for the purpose of a jury determination whether the defendant lacked the capacity to deliberate and premeditate required of first degree murder. Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964); King v. State, 80 Nev. 269, 392 P.2d 310 (1964); State v. Bourdlais, 70 Nev. 233, 265 P.2d 761 1954); State v. Arellano, 68 Nev. 134, 227 P.2d 963 (1951); Ex parte Kramer, 61 Nev. 174, 122 P.2d 862 (1942); State v. Fisko, 58 Nev. 65, 70 P.2d 1113 (1937); State v. Holdaway, 56 Nev. 278, 48 P.2d 420 (1935); State v. Jukich, 49 Nev. 217, 242 P. 590 (1926); State v. Randolph, 49 Nev. 241, 242 P. 697 (1926); State v. Casey, 34 Nev. 154, 117 P. 5 (1911); State v. Johnny, 29 Nev. 203, 87 P. 3 (1906). Also State v. Thompson, 12 Nev. 140 (1877). The jury was presented considerable evidence relative to his intoxication. Further, evidence was offered to show that he was despondent over his domestic troubles with Rebecca and that he had mentioned suicide on at least one occasion.

We do not accept Jackson's plea that we should overturn our previous ruling that the right and wrong test of legal insanity, the M'Naghten rule, is the law of Nevada. Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967); Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965); Kuk v. State, supra; Sollars v. State, 73 Nev. 248, 316 P.2d 917 (1957); State v. Lewis, 20 Nev. 333, 11 P. 241 (1889). Those portions of this appeal relating to the insanity question including proffered instructions thereon are denied as being contrary to the law of this state. Harris v. State, 83 Nev. 404, 432 P.2d 929 (1967).

2. The trial court refused to give two requested instructions to the jury on voluntary manslaughter. We agree with the trial court that there is no evidence in the record to justify those instructions. NRS 200.050 and 200.060 prescribe voluntary manslaughter:

NRS 200.050. "In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing."

NRS 200.060. "The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible, for, if there should appear to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and punished as murder."

The distance between the scene of the fight at the pickup truck to Jackson's car to which he walked after he was knocked to the ground by England and the time it took to go there, remove the rifle from his automobile, load and fire it, rules out the sudden irresistible impulse that makes up voluntary manslaughter. See State v. Fisko, supra; Lisby v. State, 82 Nev. 183, 414 P.2d 592 (1966); Holland v. State, 82 Nev. 191, 414 P.2d 590 (1966).

3. Other contentions of error are also without merit. When the lower court did not permit the arresting police officer to give his opinion of whether or not Jackson was intoxicated at the scene of the crime the record is not clear if the reason for the ruling was for lack of proper foundation or whether the court felt the question was improper. Whatever the reason, intoxication is a matter of common perception, one which most mature persons are qualified to observe, particularly a police officer. We think the officer should have been permitted to testify relative to the defendant's intoxication. However, the record is replete with descriptions of Jackson's condition as well as his blood alcohol content. We do not accept defendant's contention that the officer's testimony was of vital significance in that he was the only witness who could relate the defendant's condition at about the time of the shooting. There were several witnesses who likewise had similar opportunity to observe the defendant shortly after the event. The error was harmless.

Further, we reject the contention that this being a capital case it should have been prosecuted by indictment instead of by information. Morford v. Fogliani, 82 Nev. 79, 411 P.2d 122 (1966); United States ex rel. Morford v. Hocker, 268 F.Supp. 864 (1967).

Also, the expert psychiatric witness for the defense was asked whether Jackson did *in fact* premeditate and deliberate to kill England. An objection to the question was correctly sustained. While an expert may testify relative to an ultimate fact in issue, his answers should be limited to an opinion based upon his observations and conclusions. The issue of mental capacity is one which must be stated in terms of an opinion. Actually, preceding the question in issue the witness properly answered a similar question by stating that in his opinion that defendant did not have the capacity to deliberate or premeditate at the time. Moreover, in this case the witness answered other questions bearing on the effects of the drinking, despondency and jealousy so that facts enabling the jury to decide the merits of the defense were fully presented.

Lastly, Jackson was refused a requested instruction that no consideration be given to his failure to take the witness stand. The instruction requested was similar to that requested in Bruno v. United States, 308 U.S. 287 (1939). No special instruction relating exclusively to the testimony of the defendant may be given. NRS 175.170; Graves v. State, 82 Nev. 137, 413 P.2d 503 (1966). The trial court did instruct the jury, "In accordance with a right guaranteed by the Constitution of the State of Nevada no person can be compelled in a criminal action to be a witness against himself." We know of no right that requires the giving of an instruction additional to that which was given. Cf. Bruno v. United States, supra; see Griffin v. California, 380 U.S. 609 (1965).

We affirm.

THOMPSON, C. J., COLLINS, BATJER, and MOWBRAY, JJ., concur.