BILLY WILLIAMS, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 5597

March 17, 1969 451 P.2d 848

*Michael V. Roth,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General; *William J. Raggio,* District Attorney, and *Virgil D. Dutt,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, COLLINS, C. J.:

This appeal is from a conviction of robbery and a sentence to life imprisonment for being an habitual criminal. We affirm the conviction for robbery and the resulting habitual criminal sentence.

On September 6, 1967, at approximately 8:30 p.m., while Mr. E. F. Loomis, his wife and two children, were watching

television in a bedroom of their home, their attention was directed to a man standing in the doorway of the bedroom. He had on a black mask and was holding a gun. He ordered the Loomis family to lie on the floor, and ordered Mr. Loomis to give him some money. Mr. Loomis retrieved his trousers from a nearby chair and threw them to him. Mr. Loomis was then ordered to open the safe which was located in the bedroom. This order was complied with and from the safe the intruder was given several rolls of quarters and one roll of fifty cent pieces.

The intruder then left and Mr. Loomis called the Reno Police Department, giving them a description. The intruder was described as a short Negro male, approximately 125 pounds, wearing baggy clothes and a dark foul-weather cap around his face, with a large hole in it for the eyes and nose.

Between 8:30 and 8:45 p.m. officers Merel Kennedy and John Flynn received a call from the police dispatcher that there had been a robbery at the Loomis residence. Shortly thereafter, they were patrolling the area around the Loomis home in their patrol wagon, when at the intersection of Silver and Sierra Streets, some four blocks from the Loomis residence, they observed a short Negro male walking down the street with a valise in his hand. This person was not dressed in the manner described by Mr. Loomis. The officers called to him, whereupon he put the valise down and waited for the officers to approach him. Officer Flynn asked for some identification, and the individual stated that he had none. He was asked where he was from, and he replied "Oakland." As the officer was about to ask a third question, the suspect jumped to the right and pulled a weapon. Shots were exchanged, and Officer Flynn was wounded. The suspect fled the scene. Officer Kennedy gave chase but lost him.

The sound of gunfire attracted the attention of Frank Cole, a member of the Washoe County Sheriff's department. He went to the scene and observed that the suspect in his haste had left behind the valise he had been carrying. This Officer Cole took into his possession and inventoried its contents. In the valise were the clothes worn by the individual who robbed the Loomis residence. It also contained one black and one brown shoe. When appellant was later arrested, he was found to be wearing one black shoe and one brown shoe.

The appellant, Billy Williams, was arrested by other police officers sometime later when he was observed walking along the banks of the Truckee River between Sierra and Virginia Streets. At that point on the river bank the city streets are

much higher than the river bank. Officer Brian Milich had to climb down a tree to get the appellant. The officer searched appellant, and in his right rear pocket found a neckerchief containing six dollars worth of quarters and twenty dollars worth of half dollars. Appellant was pulled with a rope from the river bank. It was subsequently discovered that he had a bullet wound in his shoulder.

Appellant assigns as error the following points which relate exclusively to the robbery conviction:

I. Refusal of appellant's offered instructions Nos. I and II concerning unsound mind and lunacy.

II. Admissibility of Officer Gault's testimony in that it concerns evidence of other crimes.

III. The trial court's failure to order a hearing to determine if, at the time of trial, appellant was sane.

IV. Admissibility of Officer Flynn's testimony concerning appellant's involvement in the shooting incident which resulted from questioning of appellant by police officers.

1. Appellant requested, but the lower court refused, the following instructions:

I. Nevada law provides that lunatics, idiots and insane persons are not capable of committing crimes. It is expressly provided by statute that idiots and lunatics are not of sound mind. If soundness of mind and legal insanity are synonymous, the express provisions of our statute exempting idiots and lunatics from criminal responsibility would be superfluous because they would necessarily be included within the provisions exempting the insane.

II. Idiots, lunatics and insane persons are not capable of committing crimes. This is because they are not capable of manifesting the mens rea necessary to constitute a criminal act. A lunatic has been defined as a person of deranged or unsound mind; a person whose mental facilities are in a condition called lunacy. Lunacy has been defined as any form of mental unsoundnss except idiocy.

There are certain Nevada statutes which bear upon the question of the mental capability of accused persons to be held responsible for criminal acts. They are: NRS 193.190 which states that, "In every crime or public offense there must exist a union, or joint operation of act and intention, . . ."; NRS 193.200 which states, "Intention is manifested by the circumstances connected with the perpetration of the offense, and the *sound mind* and discretion of the person accused." (Emphasis added.)

Appellant contends in the absence of a sound mind there can be no intent and therefore no crime or public offense.

NRS 193.210 provides that, "A person shall be considered of sound mind who is neither an idiot nor lunatic, nor affected with insanity. . . ."

Another Nevada statute defines persons who are capable of committing crime. NRS 194.010 provides, "All persons are liable to punishment except those belonging to the following classes:

"1. . . .

"2. . . .

"3. Idiots

"4. Lunatics and insane persons."

Appellant does not contend he was insane under the M'Naghten rule at the time of commission of the robbery. M'Naghten's case is the approved test of insanity in Nevada. Jackson v. State, 84 Nev. 203, 438 P.2d 795 (1968); Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967); Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965), cert. denied 384 U.S. 1012 (1966).

Appellant contends, however, that the M'Naghten rule does not apply where the defense is lunacy, and submitted proposed instructions I and II quoted above.

Neither this court nor the legislature has provided a definition of lunacy.

We are convinced that the rule in M'Naghten's case is the test of criminal responsibility in the State of Nevada, whether the alleged absence of criminal responsibility is sought to be attributed to lunacy, idiocy or insanity. In State v. Lewis, 20 Nev. 333, 351, 22 P. 241, 247 (1889), the court said:

"[I]f a man has capacity and reason sufficient to enable him to distinguish right from wrong as to the particular act in question, and has knowledge and consciousness that the act he is doing is wrong and will deserve punishment, he is, in the eye of the law, *of sound mind and memory,* and should be held criminally responsible for his acts. . . ." (Emphasis added.)

That quotation was recently approved by this court in Criswell v. State, 84 Nev. 459, 443 P.2d 552 (1968). Under NRS 193.210, three types of persons can be said to have unsound minds: (1) idiots; (2) lunatics; and (3) those affected with insanity. We hold M'Naghten's rule is the proper test in determining criminal responsibility of a defendant alleged to have

been suffering from any of those three conditions at the time of his commission of a crime. The instructions requested were therefore legally erroneous and no error occurred in their refusal.

2. Appellant contends it was prejudicial error for the court to allow Officer Gault of the San Diego Sheriff's office to testify he recognized the brown valise found by Officer Cole at the scene where Williams was first stopped, because it tended to inject evidence of a prior offense. Any error, if it was error, was rendered harmless when, upon objection and motion of defense counsel, the testimony was stricken and the jury instructed to disregard it.

3. The lower court, at no time during the trial, ordered a hearing pursuant to NRS 178.405, to determine if appellant was sane.

NRS 178.405 reads:

"When an indictment or information is called for trial, or upon conviction the defendant is brought up for judgment, *if doubt shall arise* as to the sanity of the defendant, the court shall order the question to be submitted to a jury that must be drawn and selected as in other cases." (Emphasis added.)

NRS 178.410 reads:

"The trial of the indictment or information or the pronouncing of the judgment, as the case may be, shall be suspended until the question of insanity shall be determined by the verdict of the jury."

The doubt mentioned in NRS 178.405 means doubt in the mind of the trial court, rather than counsel or others. People v. Jensen, 275 P.2d 25 (Cal. 1954). A determination whether doubt exists rests largely within the discretion of the trial judge. Hollander v. State, 82 Nev. 345, 418 P.2d 802 (1966); People v. Aparicio, 241 P.2d 221 (Cal. 1952); People v. Gilberg, 240 P. 1000 (Cal. 1925). This issue may be suggested to the court or it may be inquired into by the court of its own motion. If the court determines a doubt to exist, it must suspend the trial and inquire into the sanity of the accused. People v. Vester, 26 P.2d 685 (Cal. 1933); and see Krause v. Fogliani, 82 Nev. 459, 421 P.2d 949 (1966).

The record demonstrates the court below made that inquiry and thereafter concluded there was no doubt regarding

appellant's sanity. There is substantial evidence to support that conclusion. We see no error in the court's decision.

4. Appellant contends it was prejudicial error to allow Officer Flynn to testify about the shooting incident when appellant was stopped for questioning, because it admitted evidence of a separate and distinct offense than the robbery charge for which he was on trial.

Appellant, when stopped and questioned, whipped out a gun, wounded the officer, and fled. Evidence of the flight was admissible as indicative of a guilty mind. People v. Hagan, 21 Cal.Rptr. 116 (Cal.App. 1962); People v. Hall, 249 P. 859 (Cal. 1926). All the circumstances of the flight may be shown, including the gunning down of the officer. People v. Hall, supra; People v. Weatherford, 178 P.2d 816 (Cal.App. 1947). There was no error in admission of the testimony.

The conviction of robbery and sentence is affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.