IN THE SUPREME COURT OF THE STATE OF NEVADA

STEVEN ERIC GOULD,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 83429

FILED

OCT 11 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury trial, of invasion of the home while in possession of a deadly weapon; first-degree kidnapping with the use of a deadly weapon, victim 60 years of age or older; burglary while in possession of a deadly weapon, conspiracy to commit robbery; and robbery with the use of a deadly weapon, victim 60 years of age or older. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge. Appellant Steven Eric Gould raises seven contentions on appeal.[1]

*Speedy trial*

First, appellant argues that his speedy trial rights were violated. We disagree. As to the statutory right to a speedy trial under NRS 178.556, there was good cause for the four-year delay. *See Huebner v. State*, 103 Nev. 29, 31, 731 P.2d 1330, 1332 (1987) (stating that dismissal is mandatory under NRS 178.556 only if no good cause is shown for the delay). The delay in bringing appellant to trial was attributable to appellant's incarceration in California for over two years after his indictment, a competency evaluation upon his extradition to Nevada, issues cooperating with his counsel, the COVID-19 pandemic, and motion practice. As to the

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

22-32015

constitutional right to a speedy trial, the four-year delay between the indictment and trial was sufficient to trigger a speedy-trial analysis, *State v. Inzunza*, 135 Nev. 513, 516-17, 454 P.3d 727, 731 (2019) (holding that a delay approaching one year is sufficient to trigger the speedy-trial analysis), but the relevant factors weigh against a violation. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972) (identifying factors to be balanced in deciding whether the right to a speedy trial has been violation). Little of the delay was attributable to the State, and the reasons for the delay were valid and appropriate. *See id.* at 531 (explaining that deliberate attempts to delay the trial by the State should weigh against the government, neutral factors like negligence or overcrowded courts should be weighted less heavily, and valid reasons may justify appropriate delay); *cf. United States v. Olsen*, 995 F.3d 683, 693 (9th Cir. 2021) (holding that "a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health), *amended and superseded on denial of reh'g en banc*, 21 F.4th 1036 (2022); *United States v. Smith*, 460 F. Supp. 3d 981, 984 (E.D. Cal. 2020) ("Almost every court faced with the question of whether general COVID-19 considerations justify an ends-of-justice continuance and exclusion of time [from speedy-trial considerations] has arrived at the same answer: yes."). And appellant has not demonstrated prejudice.[2] *See Barker*, 407 U.S. at 532 (explaining that prejudice "should be assessed in the light

---

[2]To the extent that appellant argues that prejudice should be presumed, we reject the argument because the delay was less than five years and was not caused by bad-faith intentional misconduct or gross negligence on the State's part. *See Inzunza*, 135 Nev. at 519-20, 454 P.3d at 733-34 (discussing the circumstances in which the defendant may be relieved of showing prejudice).

of the interests of the defendants which the speedy trial right was designed to protect"). He offered no proof that the delay impaired his defense by impacting the availability of witnesses, records, or other evidence. *See Sheriff v. Berman*, 99 Nev. 102, 108, 659 P.2d 298, 301 (1983) (holding that defendants failed to show prejudice when they offered no proof that the delay impacted their defense). Instead, he asserts prejudice based on the fact that during the delay his accomplices pleaded guilty and agreed to testify against him; however, those guilty pleas were entered while he was incarcerated in California, before any asserted delay by the State. He further claims prejudice because the State conducted confirmatory DNA testing shortly before the trial date. But we are not convinced that circumstance implicates the harms that the speedy-trial right was designed to protect against. In particular, in evaluating prejudice for purposes of a speedy-trial violation, we focus on whether the delay harmed the defendant's ability to gather and present evidence. *See Berman*, 99 Nev. at 108, 659 P.2d at 301. The fact that the prosecution gathered additional inculpatory evidence during the delay did not impair appellant's ability to gather and present evidence. *See, e.g., United States v. Rosson*, 441 F.2d 242, 247 (5th Cir. 1971) ("[W]e conclude that a reasonable delay which enables the government to accumulate the evidence necessary to make out a prima facie case does not prejudice the accused by impairing his 'ability . . . to defend himself.'"). And appellant did not assert that the timing of the DNA evidence disclosure prevented him from retaining a rebuttal expert or conducting an appropriate investigation. Notably in that respect, the State had provided notice years before the trial date that it intended to present expert DNA testimony. We therefore conclude that

appellant has not demonstrated a violation of his constitutional right to a speedy trial.

*Sufficiency of the evidence*

Appellant argues that the State did not introduce sufficient evidence that he was involved in the crime, that he was responsible for using a deadly weapon, or that the movement or restraint underlying the kidnapping conviction were beyond that necessary to complete the robbery. When it comes to a sufficiency-of-the-evidence challenge, we review the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). A jury's verdict will not be disturbed on appeal where substantial evidence supports its verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981). We conclude that appellant's contentions lack merit for the following reasons.

First, sufficient evidence connects appellant to the crimes he was convicted of committing. The victim identified appellant in a photographic lineup roughly one month after the crime. The accomplices testified that they planned and engaged in the home invasion with appellant. And other evidence corroborated the victim's pretrial identification of appellant and the accomplice testimony. Appellant's DNA was recovered from material used to bind the victim and the victim's property was recovered from a home where appellant's mother and wife lived. Evidence also showed that appellant fled from police in California because he knew he was wanted in Las Vegas: his phone contained texts that indicated he engaged in robberies in Las Vegas, research about the

Nevada home invasion statute, and photographs of the victim's property. Although there was some evidence undermining the victim's pretrial identification and she was unable to identify appellant at trial four years later, those considerations were for the jury to weigh. *See, e.g., Rose v. State*, 123 Nev. 194, 202-03, 163 P.3d 408, 414 (2007) ("[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." (quoting *Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998))). Viewing the evidence in the light most favorable to the State, we conclude there was sufficient evidence for a rational juror to find beyond a reasonable doubt that appellant planned and participated in the offenses for which he was convicted.

Second, sufficient evidence supports the deadly weapon enhancement. The victim testified that both assailants brandished weapons. Police who responded to the home recovered a pellet gun and a live .38 special cartridge from the home. The victim did not own a gun or ammunition. A search of a co-conspirator's home revealed similar .38 special ammunition and a pneumatic pistol, which is a deadly weapon under Nevada law. *See* NRS 193.165(6)(c); NRS 202.350(1)(d)(3); NRS 202.265(5)(c). While the co-conspirator testified that the pneumatic weapon was not used in the crime, it was for the jury to determine the weight and credibility of that testimony. *Rose*, 123 Nev. at 202-03, 163 P.3d at 414. Viewing this evidence in the light most favorable to the State, we conclude that a rational juror could find beyond a reasonable doubt that appellant used a deadly weapon in the crime. *See* NRS 193.165 (providing additional penalty for crimes committed with the use of a deadly weapon); *Harrison v. State*, 96 Nev. 347, 351, 608 P.2d 1107, 1110 (1980) (recognizing that testimony of victim describing firearm is sufficient to support the deadly

weapon enhancement); *Brooks v. State*, 124 Nev. 203, 210, 180 P.3d 657, 662 (2008) (explaining when an unarmed offender "uses" a deadly weapon for purposes of NRS 193.165).

Third, substantial evidence supports the kidnapping conviction independent of the robbery. *See* NRS 200.310(1) ("A person who willfully . . . confines . . . a person by any means whatsoever with the intent to hold or detain . . . the person . . . for the purpose of . . . robbery upon or from the person . . . is guilty of kidnapping in the first degree[.]"); *Wright v. State*, 94 Nev. 415, 417-18, 581 P.2d 442, 443-44 (1978) (providing that incidental movement from one room to another during a robbery is, alone, insufficient to sustain a separate kidnapping charge). During the hour appellant and an accomplice spent in the victim's home, they demanded money, property, and her PIN number, and repeatedly threatened her while ransacking her bedroom and home. They left her presence for a discussion. Appellant left, and his co-assailant ordered the victim into the living room where he tied her to a chair. Appellant returned after 15 minutes and again demanded the PIN number for the victim's debit card. The assailants ordered her to remain bound for 30 minutes and then left. Viewing this evidence in the light most favorable to the State, we conclude that a rational juror, who had been properly instructed that "movement of the victim [must be] over and above that required to complete" the robbery as was the case here, could have found beyond a reasonable doubt that the movement and binding of the victim was "substantially in excess of that necessary" to complete the robbery or had "independent significance from the act of robbery" and supported the dual convictions for robbery and kidnapping. *Mendoza v. State*, 122 Nev. 267, 274-75, 130 P.3d 176, 180-81 (2006).

*Evidence of flight and uncharged conduct*

Appellant argues that the district court erred in admitting evidence that he fled from officers in California before his arrest. He asserts that the State did not establish that his attempts to elude California police were relevant or that the probative value of the evidence was not outweighed by the danger of unfair prejudice. He also contends that the district court erred in removing the word "immediately" from the flight instruction. We discern no abuse of discretion in admitting the evidence or error in giving the flight instruction. *See Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 676 (2006) (reviewing admission of uncharged conduct for abuse of discretion); *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (reviewing decisions regarding jury instructions for abuse of discretion or judicial error).

After conducting an evidentiary hearing, the district court concluded that evidence of appellant's attempt to evade police in a high-speed and later foot-chase combined with his statement acknowledging that he fled to avoid questioning by Las Vegas police showed his consciousness of guilt and therefore was relevant. We agree. *See Potter v. State*, 96 Nev. 875, 876, 619 P.2d 1222, 1222 (1980) ("Flight is more than merely leaving the scene of the crime. It embodies the idea of going away with consciousness of guilt and for the purpose of avoiding arrest."); *Williams v. State*, 85 Nev. 169, 175, 451 P.2d 848, 852 (1969) (considering defendant's flight and shooting of a police officer who stopped and questioned defendant to be "admissible as indicative of a guilty mind"). Further, these acts were supported by clear and convincing evidence through the testimony of an officer who pursued appellant during the vehicle chase, responded to the accident, and spoke with appellant in the hospital after his apprehension. And the probative value of the evidence was not substantially outweighed

by the danger of unfair prejudice. *See State v. Eighth Judicial Dist. Court (Armstrong)*, 127 Nev. 927, 933, 267 P.3d 777, 781 (2011) (recognizing that evidence is unfairly prejudicial when it appeals to the jurors' emotions or invites the jury to find guilt on a ground apart from proof of the charged offenses).

We further conclude that the district court did not plainly err in omitting the word "immediately" from the flight instruction. *See Jeremias v. State*, 134 Nev. 46, 50, 412 P.3d 43, 48-49 (2018) (reviewing unobjected to error for plain error affecting substantial rights). The given instruction was consistent with the evidence showing that appellant fled when police tried to apprehend him in California, not immediately after the crime. *See Rosky v. State*, 121 Nev. 184, 199, 111 P.3d 690, 699-700 (2005) (recognizing that district court may give flight instruction when evidence shows that defendant fled "with consciousness of guilt and to evade arrest"). Because the jury could reasonably infer from the evidence presented that appellant's attempt to evade capture by California police signified "something more than a mere going away," *Weber v. State*, 121 Nev. 554, 581-82, 119 P.3d 107, 126 (2005) (quoting *State v. Rothrock*, 45 Nev. 214, 229, 200 P. 525, 529 (1921)); *see also Carter v. State*, 121 Nev. 759, 770, 121 P.3d 592, 599 (2005), we conclude that the district court did not err in giving the flight instruction as worded, *see, e.g., Walker v. State*, 113 Nev. 853, 871, 944 P.2d 762, 773 (1997) (approving of flight instruction without "immediately" qualification); *Matthews v. State*, 94 Nev. 179, 181, 576 P.2d 1125, 1126 (1978) (similar).

Appellant also contends that the district court abused its discretion in admitting his post-arrest statement because it referenced uncharged conduct. We disagree. Appellant told police that he tried to

elude them because "Vegas police wanted to talk to him and that he did not want to go back to jail." Although appellant's statement implied he had engaged in other criminal activity ("he did not want to go back to jail"), *see Rice v. State*, 108 Nev. 43, 44, 824 P.2d 281, 281 (1992) (recognizing that a statement references prior criminal history where a jury could reasonably infer from it that defendant engaged in prior criminal activity), the statement was relevant to show appellant's consciousness of guilt with respect to the charged offenses and the district court instructed the jury that appellant's flight and statement were to be considered only for that purpose. Given those circumstances, we conclude the district court did not abuse its discretion in admitting the statement. *See Rhymes v. State*, 121 Nev. 17, 21-22, 107 P.3d 1278, 1281 (2005).

*Miranda violation*

Appellant argues that his statement to California police was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). We discern no error that is plain from a casual inspection of the record and affected appellant's substantial rights by "causing 'actual prejudice or a miscarriage of justice.'" *Martinorellan v. State*, 131 Nev. 43, 48-49, 343 P.3d 590, 593 (2015) (quoting *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008)) (addressing requirements for plain-error review when there was no objection in district court). The totality of the circumstances indicates that appellant was in custody after a high-speed chase when the officer guarding him asked him why he fled. *See Carroll v. State*, 132 Nev. 269, 281, 371 P.3d 1023, 1032 (2016) ("*Miranda* warnings are required when a defendant is subjected to a custodial interrogation." (internal quotation marks omitted)). But appellant did not object below and the record is silent as to whether appellant was provided adequate *Miranda* warnings before

Supreme Court
of
Nevada

(O) 1947A

9

he made the statement. We therefore cannot conclude that any error in admitting the statement based on a *Miranda* violation is plain from a casual inspection of the record. We also are not convinced that any error in this respect caused actual prejudice or a miscarriage of justice given the other evidence presented at trial.

*Cellphone contents*

Appellant argues that the district court erred in admitting a seized cellphone's contents over his objections that the State did not establish an adequate foundation or disclose the evidence in a timely manner. In addition, for the first time on appeal, he asserts that messages on the phone referred to uncharged conduct and impermissibly informed the jury of the penalty for home invasion. He also asserts that the disclosure of the entire cellphone contents may have obscured potentially exculpable location data.

We discern no abuse of discretion in admitting the cell phone contents as the State laid an adequate foundation for the admission of the evidence. *Mclellan v. State*, 124 Nev. 263, 266, 182 P.3d 106, 109 (2008). Testimony established that the officer analyzing the phone received it from property taken from appellant's vehicle at the time of his arrest. *See Sorce v. State*, 88 Nev. 350, 352-53, 497 P.2d 902, 903 (1972) (providing that foundation need only show that it is "reasonably certain that no tampering or substitution took place" (citing *Oliver v. State*, 85 Nev. 10, 449 P.2d 252 (1969))). Although "cellular telephones are not always exclusively used by the person to whom the number is assigned," *Commonwealth v. Koch*, 39 A.3d 996, 1005 (Pa. Super. Ct. 2011), here other evidence indicates that appellant used the phone: the phone was seized from the car appellant was driving and contained usernames for banking and social media apps that

indicated appellant was using it, *cf. Rodriguez v. State*, 128 Nev. 155, 162, 273 P.3d 845, 849 (2012) (providing that a proponent must provide "sufficient direct or circumstantial evidence of authorship in order to authenticate [a] text message as a condition precedent to its admission"). The record also indicates that the State timely disclosed the cell phone contents to the defense roughly three months before trial. *See* NRS 174.285(2) (requiring a party to comply with a disclosure request "not less than 30 days before trial"). The State's subsequent, more focused disclosure merely highlighted evidence already in the defense's possession. Appellant has not identified any exculpatory cell tower location data that he contends was hidden within the disclosed data.

To the extent that the messages contained in the cell phone refer to uncharged conduct and information about potential sentencing ranges, appellant did not object on these grounds below and we discern no plain error. *Mclellan*, 124 Nev. at 266, 182 P.3d at 109. The messages referring to criminal conduct were relevant to show that appellant participated in the charged offenses and were not unduly prejudicial. *See id.* at 270, 182 P.3d at 111 (evaluating whether evidence of prior bad acts would have been admissible when conducting plain error review). The photo depicting the home invasion statute was relevant to appellant's consciousness of guilt. Although the photo also depicted information that a jury may not consider when adjudicating guilt (the potential sentencing range for the offense), the photo was mentioned only briefly during testimony, the record indicates that it was a thumbnail image and only the statute's heading appeared to be readily legible, and the jury was instructed that it was not to consider punishment in determining guilt. In these circumstances, the alleged error is not plain from a casual inspection of the

record and did not cause actual prejudice or a miscarriage of justice. *See Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) ("An error is plain if the error is so unmistakable that it reveals itself by a casual inspection of the record." (internal quotation marks omitted)); *see also McNamara v. State*, 132 Nev. 606, 622, 377 P.3d 106, 117 (2016) ("Jurors are presumed to follow the instructions they are given.").

*Prosecutorial misconduct*

Appellant argues that the State impermissibly shifted the burden of proof by arguing that the defense failed to call a witness and improperly emphasized appellant's uncharged conduct. Appellant did not object to either argument, and we discern no plain error. *Valdez*, 124 Nev. at 1190, 196 P.3d 477. The prosecutor's comments, when considered in context, do not amount to an attempt to shift the burden of proof. *See Knight v. State*, 116 Nev. 140, 144-45, 993 P.2d 67, 71 (2000) (observing that "[a] prosecutor's comments should be viewed in context" when considering whether a defendant should be afforded relief); *Whitney v. State*, 112 Nev. 499, 502, 915 P.2d 881, 883 (1996) (recognizing that a prosecutor impermissibly shifts the burden of proof by commenting "on the defense's failure to produce evidence or call witnesses"). Instead, the argument responded to an assertion made in the defense's opening statement about a witness the defense intended to call to opine that the pretrial photographic lineup was unreliable. *See Greene v. State*, 113 Nev. 157, 178, 931 P.2d 54, 67 (1997) (recognizing rebuttal arguments may permissibly respond to issues raised by the defense's closing), *receded from on other grounds by Byford v. State*, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000). The prosecutor pointing out that the "defense failed to substantiate its theories with supporting evidence," does not amount to burden shifting. *Evans v. State*,

SUPREME COURT
OF
NEVADA

(O) 1947A

12

117 Nev. 609, 631, 28 P.3d 498, 513 (2001), *overruled on other grounds by Lisle v. State*, 131 Nev. 356, 366 n.5, 351 P.3d 725, 732 n.5 (2015). And because the contents of appellant's cellphone were properly admitted into evidence, the prosecutor could properly quote messages. Moreover, the prosecutor's argument relied on the statement and its timing shortly after the charged offense to show that appellant acknowledged his participation in that offense and did not emphasize the uncharged conduct.

*Cumulative error*

Appellant contends that the cumulative effect of errors during trial warrants reversal. *See Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (providing the relevant factors to consider for a claim of cumulative error). Appellant has not demonstrated the existence of any error. Thus, there is nothing to cumulate. *See Lipsitz v. State*, 135 Nev. 131, 139 n.2, 442 P.3d 138, 145 n.2 (2019) (concluding that errors did not cumulate as there was only one error). Accordingly, we

ORDER the judgment of conviction AFFIRMED.[3]

_____, C.J.
Parraguirre

_____, J.
Herndon

_____, Sr.J.
Gibbons

cc:    Hon. Jerry A. Wiese, District Judge
       Steven S. Owens
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[3]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.