OPINION
 

 By the Court,
 

 Cherry, J.:
 

 Curt Mclellan was convicted of 22 counts of sexual assault of a minor under 14 years of age and 20 counts of lewdness with a child under 14 years of age. He now appeals those convictions on the basis of the district court’s admission into evidence of a wiretapped phone call placed by California police to Mclellan in Nevada. Mclellan argues that such evidence would be considered unlawful and inadmissible if obtained by wiretap in Nevada because he did not consent to the interception. We hold that Nevada law allows the admission of evidence legally obtained in the jurisdiction seizing the evidence.
 

 Moreover, Mclellan contends that the district court should not have admitted evidence regarding uncharged acts occurring in California because they constituted evidence of prior bad acts, rather than evidence of the crimes for which he was charged. We conclude that the district court did not abuse its discretion in admitting the evidence, but we take this opportunity to clarify the type of limiting instructions district courts should administer regarding the limited admission and use of prior bad act evidence and hold that a defendant may waive his right to a limiting instruction at the time the evidence is introduced at trial.
 
 [1]
 

 FACTS
 

 Mclellan first met nine-year-old J.F. when he coached her soccer team. Mclellan dated, and eventually married, J.F.’s mother, Hope, when J.F. was in sixth grade. Hope worked long hours and often traveled as part of her employment. While Hope was away, Mclellan was responsible for J.F.
 

 The first incident of abuse occurred when Mclellan took J.F. to his job site after she expressed an interest in his work. Mclellan
 
 *266
 
 told J.F. he wanted to be her “special dad” and subsequently made her agree to four commitments, which he recorded in a notebook. These commitments included “talking,” “holding hands,” “physical intimacy,” and “trust.” After the first incident in California, there were several incidents between Mclellan and J.F. in Clark County, Nevada, each progressive in their intimacy, and, ultimately, their occurrence over the next four years. Mclellan repeatedly coerced J.F. into engaging in sexual conduct under the pretense that he could be her “special dad.”
 

 Hope separated from Mclellan in J.F.’s eighth-grade year, sending J.F. to live with her aunt and uncle in Mission Viejo, California. In California, J.F. began cutting herself and attempted suicide several times. J.F. then decided she was going to “let it out” because she was very upset. She called Mclellan to confront him, and he repeatedly told her not to tell anyone. The same night J.F. called Mclellan, J.F.’s uncle awoke to find her hysterical and bleeding from several large, self-inflicted cuts. J.F.’s aunt then called J.F.’s counselor, and J.F. eventually admitted that Mclellan sexually abused her.
 

 J.F.’s counselor told the family that she had an obligation to report sexual abuse and that the family would be contacted by the Orange County Sheriff’s Department. Thereafter, an investigator with the Orange County Sheriff’s Department arranged a phone call between J.F. and Mclellan to be conducted from J.F.’s aunt and uncle’s house in California to Mclellan in Nevada. To comply with California’s wiretap law, J.F. and her guardians consented to police taping the phone call. During the phone call, J.F. attempted to solicit a confession from Mclellan. The taped phone call was played and subsequently admitted at trial without objection. Furthermore, Mclellan did not object at trial to testimony regarding the first incident of abuse in California or the district court’s failure to issue a limiting instruction immediately before admission of the prior bad act evidence. However, the district court gave a limiting instruction regarding the bad act evidence at the conclusion of trial.
 

 DISCUSSION
 

 Admission of intercepted phone call
 

 We must now determine whether evidence lawfully seized by California law enforcement under California law is admissible in a Nevada court, when such an interception would be unlawful in Nevada and therefore inadmissible. Mclellan argues that the tape of the intercepted phone call was inadmissible because NRS 200.620 dictates that
 
 all
 
 parties to a communication must consent to the interception of wire or oral communication for it to be lawful, and therefore admissible at trial.
 

 
 *267
 
 We review a district court’s decision to admit or exclude evidence for an abuse of discretion.
 
 [2]
 
 However, “failure to object precludes appellate review of the matter unless it rises to the level of plain error.’ ’
 
 [3]
 
 Because Mclellan did not object to the admission of the tape at trial, plain error review is appropriate. In conducting plain error review, “ ‘we must examine whether there was “error,” whether the error was “plain” or clear, and whether the error affected the defendant’s substantial rights.’ ”
 
 [4]
 

 Under Nevada law, there are two methods by which a communication may be lawfully intercepted, and thus, admissible. First, both parties to the communication can consent to the interception.
 
 [5]
 
 Second, one party to the communication can consent to the interception if an emergency situation exists such that it is impractical to obtain a court order and judicial ratification is sought within 72 hours.
 
 [6]
 
 California law does not require the consent of both parties to the communication to constitute a lawful interception, but rather requires consent by only one party.
 
 [7]
 

 Admission of lawfully intercepted communications in judicial or administrative proceedings is governed by NRS 48.077. NRS 48.077 allows the admission of “the contents of any communication lawfully intercepted under the laws of the United States or of another jurisdiction before, on or after July 1, 1981, if the interception took place within that jurisdiction ... in any action or proceeding in a court ... of this State.’ ’ Thus, if the interception was lawfully made in California, it is admissible in Nevada under NRS 48.077, even when the manner of interception would violate Nevada law had the interception taken place in Nevada. California law only requires one-party consent to the communication to constitute a lawful interception.
 
 [8]
 
 Consequently, the interception here was lawful at its inception in California because J.F. and her guardians consented, making it admissible in a Nevada court under NRS 48.077.
 

 
 *268
 
 Other states have allowed the admission of legally taped conversations from another jurisdiction, even when such taped conversations would be inadmissible if obtained in their own jurisdiction. We are thus persuaded by the Supreme Court of Washington’s opinion in
 
 State v.
 
 Fowler,
 
 [9]
 
 a case factually similar to the case at bar. In
 
 Fowler,
 
 the court concluded that telephone calls lawfully recorded in Oregon, with the aid of Oregon law enforcement and the consent of one party as required in Oregon, were admissible in Washington — a two-party consent state.
 
 [10]
 
 In its reasoning, the court relied upon the fact that Oregon law enforcement did not act with the knowledge of, or at the request of, Washington law enforcement, or with the intent to use the recordings in Washington.
 
 [11]
 
 Here, California law enforcement did not act as an agent of Nevada law enforcement or with the intent to use the recordings in Nevada. Indeed, Nevada law enforcement did not find out about the recording until much later. In both cases, the sole purpose of the initial recording was for the investigation of sexual abuse in the state where the recording was made.
 

 The district court complied with NRS 48.077 in admitting the taped phone call because the phone call was recorded lawfully in California by California law enforcement who were not acting as agents of Nevada law enforcement. Therefore, we conclude that the district court did not err in admitting the phone calls into evidence.
 

 Limiting instruction regarding the California incident
 

 We now turn to the question of whether the district court erred in admitting evidence of the California incident and failing to give a limiting instruction upon the admission of the evidence. We take this opportunity to clarify our opinion in
 
 Tavares
 
 v.
 
 State
 
 regarding the absence of a limiting instruction on the limited use of prior bad act evidence and the district court’s duty to give such an instruction when the defense does not want an instruction.
 
 [12]
 
 In particular, we clarify that the defendant may waive the giving of a limiting instruction when the bad act evidence is admitted at trial.
 

 Mclellan argues that testimony about the incident at his place of employment in California was improperly admitted as evidence of prior bad acts and that, if the evidence was admissible, it necessitated a limiting instruction because of its prejudicial nature. The State contends that the testimony, even if evidence of prior bad acts, was properly admitted under NRS 48.045(2) to prove motive or plan and that the trial court ruled the testimony admissible on these grounds.
 

 
 *269
 
 We review a district court’s decision to admit or exclude evidence for an abuse of discretion.
 
 [13]
 
 However, “failure to object precludes appellate review of the matter unless it rises to the level of plain error.”
 
 [14]
 
 Because Mclellan did not object to the admission of testimony regarding the California incident or to the district court’s failure to provide a limiting instruction upon admission, plain error review is appropriate. In conducting plain error review, “ ‘we must examine whether there was “error,” whether the error was “plain” or clear, and whether the error affected the defendant’s substantial rights.’ ”
 
 [15]
 

 Before admitting evidence of a defendant’s prior bad acts, the district court must make the following three determinations on the record and outside the presence of the jury: (1) whether the evidence is relevant, (2) whether the prior bad act is proven by clear and convincing evidence, and (3) whether the danger of unfair prejudice substantially outweighs the evidence’s probative value.
 
 [16]
 
 Under
 
 Petrocelli v. State,
 

 [17]
 

 “clear and convincing proof of collateral acts can be established by an offer of proof outside the presence of the jury combined with the quality of the evidence actually presented to the jury.”
 
 [18]
 

 Once the evidence of prior bad acts is admitted, we have concluded that the prosecutor has a duty to request that the jury be instructed on the limited use of prior bad act evidence.
 
 [19]
 
 Further, the district court should raise the issue
 
 sua sponte
 
 when the prosecutor fails to request the instruction.
 
 [20]
 
 The failure of the district court to issue a limiting instruction will be reviewed for nonconstitutional error under NRS 178.598.
 
 [21]
 

 We have recognized that the standard set forth in NRS 178.598 is identical to the standard utilized by federal courts as set forth in
 
 Kotteakos v. United States.
 

 [22]
 

 The test under
 
 Kotteakos
 
 is whether
 
 *270
 
 the error ‘ ‘had substantial and injurious effect or influence in determining the jury’s verdict.”
 
 [23]
 
 Therefore, “unless we are convinced that the accused suffered no prejudice as determined by the
 
 Kotteakos
 
 test, the conviction must be reversed.’ ’
 
 [24]
 

 Since this court’s holding in
 
 Tavares,
 
 the trial court must give a limiting instruction explaining the purposes for which the evidence is admitted immediately prior to its admission and a general instruction at the end of trial reminding the jurors that certain evidence may be used only for limited purposes.
 
 [25]
 
 We now modify this duty to allow the defendant to waive the giving of a limiting instruction when the bad act evidence is admitted at trial. The defendant must explicitly waive the limiting instruction prior to the admission of the evidence. In modifying this duty, we reinforce our proposition from
 
 Tavares
 
 that “the desire of the defendant should be recognized as he is the intended beneficiary of the instruction and is in the best position to evaluate its consequence.”
 
 [26]
 
 Consequently, we realize that a defendant may have strategic reasons for waiving a limiting instruction because such a limiting instruction could aggravate the prejudicial effect of prior bad acts.
 
 [27]
 
 We thus take this opportunity to provide the defendant with a means to exercise that strategic decision.
 

 Turning to the facts of this case, we conclude that the district court did not plainly err in admitting testimony concerning the California incident. Evidence of the California incident was relevant as proof of Mclellan’s plan to coerce the victim into engaging in sexual conduct. The incident was the first intimate physical contact Mclellan had with the victim. As such, Mclellan established his motivation to assault J.F. by beginning a physical relationship. That is, Mclellan told the victim he wanted to be her “special dad” as J.F. wanted a father because she had no contact with her biological father. Thereafter, all physical contact between Mclellan and the victim took place under the pretense and his plan of being the victim’s “special dad” established at this first incident of abuse in California.
 

 Further, the California incident was proven by clear and convincing evidence. The district court reviewed the transcript of the preliminary hearing, where J.F. testified and was subject to cross-
 
 *271
 
 examination, before ruling the evidence admissible as evidence of motive and part of a common scheme or plan.
 
 [28]
 
 Furthermore, the California incident was proven at trial with J.F.’s testimony, which was very detailed, specific, and subject to cross-examination by Mclellan.
 

 Finally, the evidence of the California incident was not unduly prejudicial because of its high probative value revealing Mclellan’s motivation and plan to sexually abuse J.F. under the pretense of becoming her “special dad.”
 

 The district court gave a limiting instruction at the close of trial, concurrent with the jury instructions, but did not instruct the jury when the evidence was originally admitted. Under the
 
 Kotteakos
 
 standard, the district court’s failure to give a limiting instruction when the evidence was admitted did not have a substantial or injurious effect on the jury’s verdict because the evidence against Mclellan was overwhelming. Such overwhelming evidence included not only testimony from J.F., but also the notebook in which Mclellan recorded the four commitments and the taped phone call. We thus conclude that any error from the absence of a limiting instruction given at the time of the admission of the evidence was harmless.
 

 CONCLUSION
 

 The district court did not abuse its discretion in admitting the taped phone call because it was obtained legally in California, making it admissible under NRS 48.077. Furthermore, the district court did not abuse its discretion in admitting testimony regarding the prior bad acts in California because the evidence was proof of Mclellan’s motive and plan to sexually abuse J.F. under the pretense of becoming her “special dad.” Lastly, the district court’s failure to give a limiting instruction prior to the admission of the prior bad act evidence regarding the California incident resulted in harmless error because the evidence did not have a substantial or injurious effect on the jury’s verdict. That is, Mclellan suffered no prejudice because the other evidence against him was overwhelming. For the foregoing reasons, we affirm the judgment of conviction.
 

 Gibbons, C. J., Maupin, Hardesty, Parraguirre, Douglas and Saitta, JJ., concur.
 

 [1]
 

 Mclellan also raises the following issues on appeal: (1) the State failed to give adequate notice of the crimes charged in its information, and (2) prosecutorial misconduct denied Mclellan his constitutional right to a fair trial. We conclude that Mclellan’s argument regarding the insufficiency of the information is without merit because the information was specific enough to give notice of the crimes for which he was charged. We further conclude that any prosecutorial misconduct resulted in harmless error.
 

 [2]
 

 Thomas v. State,
 
 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006),
 
 cert. denied,
 
 552 U.S. 1140 (2008).
 

 [3]
 

 Anderson v. State,
 
 121 Nev. 511, 516, 118 P.3d 184, 187 (2005).
 

 [4]
 

 Baltazar-Monterrosa
 
 v.
 
 State,
 
 122 Nev. 606, 614, 137 P.3d 1137, 1142 (2006) (quoting
 
 Anderson,
 
 121 Nev. at 516, 118 P.3d at 187).
 

 [5]
 

 Lane
 
 v.
 
 Allstate Ins. Co.,
 
 114 Nev. 1176, 1179-80, 969 P.2d 938, 940-41 (1998).
 

 [6]
 

 NRS 200.620.
 

 [7]
 

 Cal. Penal Code § 633.5 (2008);
 
 see also People
 
 v.
 
 Towery,
 
 220 Cal. Rptr. 475, 480 (Ct. App. 1985) (providing that law enforcement may record telephone calls when one party to the call consents to police monitoring the communication).
 

 [8]
 

 Cal. Penal Code § 633.5 (2008).
 

 [9]
 

 139 P.3d 342 (Wash. 2006).
 

 [10]
 

 Id.
 
 at 347.
 

 [11]
 

 Id.
 

 [12]
 

 117
 
 Nev. 725, 30 P.3d 1128 (2001).
 

 [13]
 

 Thomas v. State,
 
 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006),
 
 cert. denied,
 
 128 S. Ct. 1061 (2008).
 

 [14]
 

 Anderson v. State,
 
 121 Nev. 511, 516, 118 P.3d 184, 187 (2005).
 

 [15]
 

 Baltazar-Monterrosa
 
 v.
 
 State,
 
 122 Nev. 606, 614, 137 P.3d 1137, 1142 (2006) (quoting
 
 Anderson,
 
 121 Nev. at 516, 118 P.3d at 187).
 

 [16]
 

 Meek
 
 v.
 
 State,
 
 112 Nev. 1288, 1292-93, 930 P.2d 1104, 1107 (1996).
 

 [17]
 

 101 Nev. 46, 692 P.2d 503 (1985).
 

 [18]
 

 Salgado v. State,
 
 114 Nev. 1039, 1043, 968 P.2d 324, 327 (1998).
 

 [19]
 

 Tavares v. State,
 
 117 Nev. 725, 731, 30 P.3d 1128, 1132 (2001).
 

 [20]
 

 Id.
 

 [21]
 

 Id.
 
 at 731-32, 30 P.3d at 1132.
 

 [22]
 

 Id.
 
 at 732, 30 P.3d at 1132;
 
 Kotteakos v. United States,
 
 328 U.S. 750 (1946).
 

 [23]
 

 Kotteakos, 328 U.S. at 776.
 

 [24]
 

 Tavares, 117 Nev. at 732, 30 P.3d at 1132 (referring to
 
 United States
 
 v.
 
 Olano,
 
 507 U.S. 725, 741 (1993)).
 

 [25]
 

 Id.
 
 at 733, 30 P.3d at 1133.
 

 [26]
 

 Id.
 
 at 731, 30 P.3d at 1132.
 

 [27]
 

 See U.S. v. Mende,
 
 43 F.3d 1298, 1302 (9th Cir. 1995).
 

 [28]
 

 Under NRS 48.045(2), evidence of prior bad acts is admissible to prove “motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.’ ’