An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

DAMIAN ELIZONDO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62309

**FILED**

SEP 26 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of attempted murder and battery with the use of a deadly weapon resulting in substantial bodily harm with the intent to promote, further, or assist a criminal gang. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

The State charged appellant Damian Elizondo and two codefendants, Edgar Huerta and Amaan Goode, with one count each of conspiracy to commit murder; attempted murder with the use of a deadly weapon with the intent to promote, further, or assist a criminal gang; and battery with the use of a deadly weapon resulting in substantial bodily harm with the intent to promote, further, or assist a criminal gang. Ciro Gil-Corona, the victim in all of the charges, was beaten with hammers and stabbed in the head and torso. The jury convicted Elizondo of attempted murder and battery with the use of a deadly weapon resulting in substantial bodily harm with the intent to promote, further, or assist a criminal gang. Elizondo now appeals.

On appeal, Elizondo argues that: (1) the district court abused its discretion by refusing to excuse the entire original venire for cause, (2) the district court abused its discretion by admitting testimony from

SUPREME COURT
OF
NEVADA

(O) 1947A

14-32156

improperly noticed State's witnesses, (3) the State committed prosecutorial misconduct requiring reversal, (4) the district court abused its discretion by admitting evidence of gang members' felonious conduct to prove the gang enhancement, (5) the State presented insufficient evidence to support the convictions, (6) the district court abused its discretion by denying Elizondo's motion for a new trial based on inconsistent verdicts, and (7) his convictions and sentences for both attempted murder and aggravated battery violate the Double Jeopardy Clause. Concluding that these arguments lack merit, we affirm.

*The district court did not abuse its discretion by refusing to excuse the entire original venire for cause*

Elizondo first argues that the district court improperly refused to excuse the entire original venire for cause. During a break in voir dire, several venire members overheard Elizondo speaking on his cellular phone. Elizondo used profanity, mentioned marijuana, expressed his opinion that the State was making a big deal out of the situation, and said that he was "the only one out." The district court excused all venire members who directly overheard the call and asked the remaining venire members to raise their hands if they heard anything about the call second-hand. The district court then individually questioned the venire members who raised their hands and excused those venire members who said that they could not remain impartial. One of the venire members said that the call "caused a stir" amongst the other venire members. Elizondo moved to excuse the entire venire for cause and the district court refused to do so.

We review a district court's decision whether to excuse potential jurors for cause for an abuse of discretion. *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005). When determining whether a district court abused its discretion, the relevant inquiry is "'whether a

prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id.* (quoting *Leonard v. State*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001) (internal quotation marks omitted)).

Here, the district court excused for cause all venire members who directly overheard the call or heard about the call and could not remain impartial. Elizondo argues that the comment that the call "caused a stir" indicates that the entire venire was tainted and that other venire members heard about the call but did not raise their hands. We cannot assume that the venire members who did not raise their hands were lying. *See McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004) ("We presume that juries follow the instructions they are given."); *State v. Barnes*, 481 S.E.2d 44, 56 (N.C. 1997) ("We presume that jurors will tell the truth."). Moreover, the district court questioned the venire regarding the call and excused all venire members who could not remain impartial. Given this procedure, we conclude that the district court properly exercised its discretion by refusing to excuse the entire venire for cause. *See Weber*, 121 Nev. at 580, 119 P.3d at 125.

*The district court did not abuse its discretion by refusing to exclude testimony from improperly noticed State's witnesses*

Elizondo next argues that the district court abused its discretion by refusing to exclude testimony from certain improperly noticed State's witnesses. On all of its notices of witnesses, the State listed "C/O DA GANG UNIT" instead of last known addresses for five witnesses, including Gil-Corona. The State's first notice of witnesses was served almost two years before trial. Five days before trial, Elizondo moved to exclude the testimony of these witnesses, and the district court denied the motion, explaining that the motion was untimely. *See* EDCR

3.20(a) (requiring pretrial motions to be filed at least 15 days prior to trial). Although the State gave improper notice, *see* NRS 174.234(1)(a)(2), the district court had discretion to "grant a continuance," exclude the testimony, or "enter such other order as it deem[ed] just under the circumstances." NRS 174.295(2); *see also Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (reviewing a district court's decision to admit or exclude evidence for an abuse of discretion). Given that Elizondo had the witnesses' names for almost two years before trial and took no steps to seek them out until five days before trial, we conclude that the district court did not abuse its discretion by admitting the witnesses' testimony. *See* NRS 174.295(2); *Mclellan*, 124 Nev. at 267, 182 P.3d at 109.

*Even if eliciting testimony that witnesses could not be located or were uncooperative was prosecutorial misconduct, reversal is unwarranted*

Elizondo also argues that the State committed prosecutorial misconduct by eliciting testimony from the lead detective on the case, Detective Cook, that (1) three witnesses for whom the State improperly listed "C/O DA GANG UNIT" could not be located or were uncooperative, and (2) his investigations into related incidents were hindered by a lack of cooperative witnesses. Because Elizondo did not object to this testimony at trial, we review for plain error. *See Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008).

First, the State's having a last known address for a potential witness is not the same as being able to locate or gain useful information from him. Thus, Cook's testimony was not necessarily inconsistent with the State's improper notice of witnesses, and Elizondo has not shown that any error in admitting Cook's testimony caused "actual prejudice or a

miscarriage of justice." *See Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (quoting *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003)).

Second, Cook's testimony regarding a lack of cooperative witnesses merely referred "to the general reluctance of witnesses to testify" and did not imply that Elizondo or his codefendants engaged in witness intimidation. *See Lay v. State*, 110 Nev. 1189, 1193-94, 886 P.2d 448, 450-451 (1994). Even if eliciting this testimony amounted to prosecutorial misconduct, it was harmless. *Id.* Therefore, reversal is unwarranted. *See id.*; *Valdez*, 124 Nev. at 1190, 196 P.3d at 477.

*The district court did not abuse its discretion by admitting evidence of other gang members' felonious conduct to prove the gang enhancement*

Elizondo further argues that the district court abused its discretion by admitting evidence of other gang members' juvenile adjudications of delinquency and arrests to prove that the gang involved in this case, Varrio Grande Vista (VGV), is a criminal gang.

In order to prove the gang enhancement, the State must prove, inter alia, that the gang at issue "[h]as as one of its common activities engaging in criminal activity *punishable as a felony*, other than the conduct which constitutes the primary offense." NRS 193.168(8)(c) (emphasis added). It is clear that the State need not offer felony convictions to prove this element because the statute says "punishable," not "punished." Moreover, NRS 193.168(7) allows the State to prove the gang enhancement using expert testimony, further indicating that the Legislature contemplated that the State could offer evidence other than adult felony convictions to prove the gang enhancement.

Elizondo argues that juvenile adjudications are civil and therefore cannot be used to prove the felonious activity element. Juvenile proceedings are civil in nature, NRS 62D.010(1)(a); *State v. Javier C.*, 128

Nev. ___, ___, 289 P.3d 1194, 1197 (2012) (recognizing that juvenile proceedings and confinement resulting therefrom are civil, not criminal), but this does not mean that a juvenile's conduct giving rise to a juvenile adjudication of delinquency is also civil. Rather, juvenile proceedings may be initiated due to a juvenile's acts that are designated felony criminal offenses. NRS 62B.330(2)(c); *see also Matter of Seven Minors*, 99 Nev. 427, 432, 664 P.2d 947, 950 (1983) (explaining that juveniles come before the juvenile courts after "committing crimes"), *disapproved of on other grounds by Matter of William S.*, 122 Nev. 432, 442 n.23, 132 P.3d 1015, 1021 n.23 (2006). Because juvenile proceedings may arise from a juvenile's acts that are punishable as felonies, and no statute prohibits the admission of juvenile adjudications of delinquency[1] to prove the gang enhancement, we conclude that juvenile adjudications are admissible to prove the felonious activity element of the gang enhancement. *See* NRS 193.168(8)(c).

Finally, Elizondo argues that NRS 193.168(8)(c) lacks standards to guide courts in determining what evidence may be admitted to prove the felonious activity element. While we agree that NRS 193.168(8)(c) contains few if any meaningful standards, we conclude that the Legislature intentionally did not impose more stringent standards and unambiguously expressed this intent in the statute itself. *See State v. Lucero*, 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011) (stating that

---

[1]Although NRS 62H.130 provides for the sealing of juvenile records, nothing suggests that the records relating to the juvenile adjudications of delinquency at issue here had been sealed, and Elizondo does not argue that the juvenile adjudications of delinquency should have been excluded pursuant to NRS 62H.130.

unambiguous statutory language is given its plain meaning). Accordingly, the district court properly construed NRS 193.168(8)(c) when it concluded that evidence other than felony convictions, including testimony regarding arrests and juvenile adjudications of delinquency, may be admitted to prove the felonious activity element of the gang enhancement. *See id.* (stating that this court reviews a district court's interpretation of a statute de novo). As a result, the district court did not abuse its discretion by admitting evidence of other gang members' arrests and juvenile adjudications to prove that VGV engages in felonious conduct as a common activity. *See Mclellan v. State,* 124 Nev. 263, 267, 182 P.3d 106, 109 (2008) (reviewing a district court's decision to admit evidence for an abuse of discretion).[2]

*Sufficient evidence supports the convictions*

Next, Elizondo argues that the State presented insufficient evidence to support the convictions.

*Attempted murder*

"Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express

---

[2]To the extent that we have previously suggested in dicta that the conduct used to prove the felonious activity element must also be committed in furtherance of the criminal gang, such a conclusion is unsupported by NRS 193.168(8)(c). *See Origel-Candido v. State,* 114 Nev. 378, 383, 956 P.2d 1378, 1381 (1998) ("The fact that individual members committed felony crimes *which benefitted the gang* does not lead necessarily to the conclusion that felonious action is a common denominator of the gang." (Emphasis added.)). NRS 193.168(8)(c) does not expressly impose this requirement, and because such a requirement would make the gang enhancement all but impossible to prove, we decline to infer that the Legislature intended to impose such a requirement. *See Lucero,* 127 Nev. at ___, 249 P.3d at 1228 (2011).

SUPREME COURT
OF
NEVADA

(O) 1947A

malice, namely, with the deliberate intention unlawfully to kill." *Keys v. State*, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988). "[D]eliberate intention unlawfully to take away the life of a fellow creature, [may be] *manifested by external circumstances capable of proof.*" NRS 200.020(1) (emphasis added); *see also Dearman v. State*, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977) ("Intent to kill . . . may be ascertained or deduced from the facts and circumstances of the killing, such as use of a weapon calculated to produce death, the manner of use, and the attendant circumstances.").

Elizondo argues that the State presented insufficient evidence of intent to support his conviction of attempted murder because Gil-Corona's injuries were not life-threatening. Gil-Corona testified that a sedan drove at him at full speed, he was beaten with hammers by five males including Elizondo, and that he was stabbed in the head and torso by Goode. Gil-Corona's injuries did not require surgery or an extended hospital stay, but given the nature of the attack, the weapons used, and the vital locations of Gil-Corona's injuries, a reasonable jury could conclude that the non-life-threatening nature of Gil-Corona's injuries was due to his luck or his attackers' ineptitude, not the absence of intent to kill. *See* NRS 200.020(1); *Dearman*, 93 Nev. at 367, 566 P.2d at 409. Accordingly, the State presented sufficient evidence to support Elizondo's conviction of attempted murder. *See McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (stating that evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks omitted)).[3]

*Aggravated battery*

Elizondo further argues that, although the evidence was sufficient for the jury to convict him of simple battery, the evidence was insufficient for the jury to find that the battery resulted in substantial bodily harm, was accomplished using a deadly weapon, or was committed in furtherance of a criminal gang. These arguments lack merit.

*Substantial bodily harm*

Substantial bodily harm is physical injury "which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ; or . . . [p]rolonged physical pain." NRS 0.060. Photographs of Gil-Corona's injuries were admitted into evidence and Gil-Corona showed the jury the scars on his torso. Gil-Corona testified that at the time of trial he had ongoing pain in his torso, suffered multiple severe headaches each week, and might not be able to

---

[3]To the extent that Elizondo argues that he could not be criminally liable for attempted murder because Goode was the one who stabbed Gil-Corona, we also reject this argument. In order to be criminally liable as a principal to a crime, an "aider or abettor must have knowingly aided the other person with the intent that the other person commit the charged crime." *Sharma v. State*, 118 Nev. 648, 655, 56 P.3d 868, 872 (2002); *see also* NRS 195.020 (stating that aiders and abettors are liable as principals). Gil-Corona testified that one of his attackers said "go ahead" before Goode stabbed him, suggesting that the group intentionally aided and abetted Goode's stabbing of Gil-Corona. Moreover, Elizondo admitted to Cook that he hit Gil-Corona in the head with a hammer and hit him in the hand when he tried to protect himself. From this evidence, a reasonable jury could conclude that Elizondo intended to kill Gil-Corona. *See McNair*, 108 Nev. at 56, 825 P.2d at 573.

continue working in construction due to his pain. This evidence was sufficient for a rational jury to conclude that the attack caused substantial bodily injury. *See id.*; *Levi v. State*, 95 Nev. 746, 748, 602 P.2d 189, 190 (1979) (stating that serious, permanent disfigurement "includes cosmetic disfigurement," and a jury determines whether an injury is serious); *McNair*, 108 Nev. at 56, 825 P.2d at 573.

*Deadly weapon*

A deadly weapon is an instrument "which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death." NRS 193.165(6)(b). The State presented evidence that Elizondo hit Gil-Corona on the head with a hammer and aided and abetted Goode's stabbing of Gil-Corona in the head and torso. This evidence, combined with the evidence of Gil-Corona's injuries discussed above, was sufficient for the jury to conclude that the battery was accomplished with a deadly weapon. *See* NRS 193.165(6)(b).

*Gang enhancement*

A person who commits a felony "knowingly for the benefit of, at the direction of, or in affiliation with, a criminal gang, with the specific intent to promote, further or assist the activities of the criminal gang" is subject to an additional penalty. NRS 193.168(1). A "criminal gang" is:

> any combination of persons, organized formally or informally, so constructed that the organization will continue its operation even if individual members enter or leave the organization, which:
>
> (a) Has a common name or identifying symbol;
>
> (b) Has particular conduct, status and customs indicative of it; and
>
> (c) Has as one of its common activities engaging in criminal activity punishable as a felony, other

than the conduct which constitutes the primary offense.

NRS 193.168(8). Elizondo appears only to argue that the evidence was insufficient to establish the final element of the gang enhancement: that VGV engages in felonious conduct as a common activity. *See* NRS 193.168(8)(c). This argument lacks merit.

In *Origel-Candido v. State*, we concluded that a gang expert's testimony was insufficient to prove the felonious activity element of the gang enhancement. 114 Nev. 378, 382-83, 956 P.2d 1378, 1381 (1998). The gang expert in *Origel-Candido* testified that the gang in that case qualified as a criminal gang under Nevada law and that he was aware of felonies committed by gang members that benefitted the gang. *Id.* at 382, 956 P.2d at 1381. However, he "did not testify as to an approximate number of . . . gang members who committed felonies" or "that incoming members of the gang were exhorted to felonious acts by senior members." *Id.* at 383, 956 P.2d at 1381. We criticized this "conclusory testimony," explaining that "[t]he fact that individual members committed felony crimes which benefitted the gang does not lead necessarily to the conclusion that felonious action is a common denominator of the gang." *Id.* Because the gang expert's testimony failed to address whether felonious conduct was a common activity of the gang, we held that the evidence was insufficient to prove the gang enhancement beyond a reasonable doubt. *Id.* at 382-83, 956 P.2d at 1381.

Unlike the gang expert in *Origel-Candido*, the State's gang expert in this case, Detective Souder, asserted facts rather than the legal conclusion that VGV is a criminal gang. Souder testified that VGV members commonly engage in felony burglary, robbery, assault, battery, and drug activity. He testified that when a VGV member commits a

crime, other members and affiliates are expected to join him, failure to do so may result in physical retaliation, and committing crimes with VGV is a way to get into and earn respect within VGV. He testified that if a VGV member is attacked, other members are expected to retaliate to protect and promote the gang. He testified that VGV had approximately 30 members and affiliates at the time of the attack and approximately 60 members and affiliates at the time of trial, and that a majority of VGV members engage in felonious conduct. Finally, Souder testified to specific examples of VGV members' felonious conduct.[4] Unlike the testimony in *Origel-Candido*, Souder's testimony addressed the approximate number of VGV members who committed felonies and explained that VGV members and affiliates are expected to commit crimes with and for VGV. Based on this testimony, a rational jury could find that VGV had as a common activity engaging in conduct punishable as a felony. *See* NRS 193.168(8)(c); *McNair*, 108 Nev. at 56, 825 P.2d at 573.

Accordingly, the State presented sufficient evidence to support Elizondo's convictions. *See McNair*, 108 Nev. at 56, 825 P.2d at 573.

*The district court did not abuse its discretion by denying Elizondo's motion for a new trial based on inconsistent verdicts*

Next, Elizondo argues that the district court abused its discretion by denying his motion for a new trial based on inconsistent verdicts. The jury found that the battery was accomplished with a deadly weapon and in furtherance of a criminal gang, but did not find these facts

---

[4]As discussed above, we are not persuaded that only adult felony convictions are admissible as examples of gang members' felonious conduct. *See* NRS 193.168(8)(c).

with regards to attempted murder. Despite this possible inconsistency, we conclude that the district court did not abuse its discretion.

The fact that a jury returns inconsistent verdicts does not justify reversal of a conviction because inconsistent verdicts "often are a product of jury lenity." *United States v. Powell*, 469 U.S. 57, 65 (1984); *see also Bollinger v. State*, 111 Nev. 1110, 1116-17, 901 P.2d 671, 675-76 (1995) (citing *Powell*, 469 U.S. at 64-69). Where a jury returns inconsistent verdicts, review for sufficiency of the evidence protects a defendant "against jury irrationality or error." *Powell*, 469 U.S. at 67. Because Elizondo points only to the inconsistent verdicts as grounds for a new trial, and because the evidence was sufficient to support the convictions, we conclude that the district court did not abuse its discretion by refusing to grant a new trial. *See id.*; *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003) (reviewing a district court's denial of a motion for new trial based on juror misconduct for an abuse of discretion).

*Elizondo's convictions and sentence do not violate double jeopardy*

Finally, Elizondo argues that sentencing him for attempted murder and aggravated battery violated the Double Jeopardy Clause. "The Double Jeopardy Clause protects against . . . multiple punishments for the same offense." *Jackson v. State*, 128 Nev. ___, ___, 291 P.3d 1274, 1278 (2012). This court reviews a claim that a conviction violates double jeopardy de novo. *Id.* at ___, 291 P.3d at 1277. If "a state legislature has clearly authorized multiple punishments for the same offense[,] . . . dual punishments do not offend double jeopardy." *Id.* at ___, 291 P.3d at 1278.

Under Nevada law, "[n]othing . . . protects a person who, in an unsuccessful attempt to commit one crime, does commit another and different one, from the punishment prescribed for the crime actually committed." NRS 193.330(2). Therefore, we concluded in *Jackson* that

the Legislature clearly authorized multiple punishments for the same conduct where that conduct constitutes both attempted murder and aggravated battery. 128 Nev. at ___, 291 P.3d at 1279-80. We further concluded that these crimes were not lesser included offenses of each other. *Id.* at ___, 291 P.3d at 1280 (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Accordingly, convicting and sentencing Elizondo for attempted murder and aggravated battery based on the same conduct did not violate double jeopardy. *Id.* at ___, 291 P.3d at 1279-80.

Elizondo further argues that his convictions and sentences for both crimes violate double jeopardy because the attempted murder conviction was conditionally dismissed on the State's motion and later reinstated after we issued our decision in *Jackson*. Although resentencing "a defendant to an increased term once the defendant has begun serving the initial sentence" violates double jeopardy, *Wilson v. State*, 123 Nev. 587, 594, 170 P.3d 975, 979 (2007), this case involves an initial sentencing on a count for which Elizondo was not previously sentenced. Accordingly, principles of double jeopardy are not violated merely because Elizondo was sentenced on the aggravated battery count first and the attempted murder count later. Moreover, Elizondo cites and we can find no authority that mandates the conclusion that reinstating his attempted murder conviction after conditional dismissal violated the Double Jeopardy Clause. We therefore reject Elizondo's double jeopardy arguments.[5]

Accordingly, we

---

[5]In addition, Elizondo argues that cumulative error warrants reversal. Because we conclude that Elizondo's assertions of error lack merit, his cumulative error argument also fails. *See Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008).

ORDER the judgment of the district court AFFIRMED.

_____ Pickering _____ , J.
Pickering

_____ , J.
Parraguirre

cc:    Hon. Valorie J. Vega, District Judge
       Law Office of Betsy Allen
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(0) 1947A

15

SAITTA, J., concurring:

Though I concur with the majority in affirming Elizondo's conviction, I write separately to comment on the issue of NRS 193.168(8)'s gang enhancement provision.

NRS 193.168(8)(c) requires the State to prove, inter alia, that the gang at issue "[h]as as one of its common activities engaging in criminal activity punishable as a felony, other than the conduct which constitutes the primary offense." The majority correctly observes that NRS 193.168(8)(c) uses the term "punishable" as opposed to "punished" and that NRS 193.168(7) allows the State to prove the gang enhancement using expert testimony. Since a statute's plain meaning controls its interpretation, *State v. Lucero*, 127 Nev. ___, ___, 249 P.3d 1226, 1228 (2011), I must agree with the majority's conclusion that the Legislature intended to allow the State to offer evidence other than prior convictions to prove the gang enhancement.

The majority concludes that juvenile adjudications are admissible to prove a gang sentencing enhancement because no statute expressly prohibits their use for this purpose. However, a cornerstone of juvenile justice law is that juvenile adjudications are civil and "not criminal in nature." NRS 62D.010(1)(a); *see also State v Javier C.*, 128 Nev. ___, ___, 289 P.3d 1194, 1197 (2012). Thus, the majority allows the admission of the juvenile records of other purported gang members to prove the gang sentencing enhancement for the present defendant.

This analysis is troubling because juvenile adjudications typically use less formal processes and fewer procedural safeguards than are present in criminal trials. *See* NRS 62D.010(1). Consequently, the use of juvenile adjudications to provide evidence in a criminal trial—as was

done here—can allow the admission of evidence that has not been subject to the procedural standards required in a criminal trial.

Furthermore, the admission of other individuals' unrelated juvenile adjudications is troubling because it allows a defendant's wrongdoing to be judged by misconduct that is not connected to the charged crime and in which the defendant was not involved. I can identify no other area of criminal law that allows the use of other individuals' unrelated conduct to increase a defendant's punishment. Though the present record does not suggest, and Elizondo does not argue, that the juvenile adjudication records at issue here had been sealed and therefore excluded under NRS 62H.130,[1] this does not alleviate my concerns about using others' unrelated crimes activity against a criminal defendant.

Finally, I write separately to express my concern about NRS 193.168(8)(c)'s lack of standards to assist our courts in determining what evidence can be admitted to prove the felonious activity element. While the majority recognizes that the statute contains few, if any, meaningful standards, it nonetheless concludes that this is evidence of the Legislature's unambiguously expressed intent not to restrict the type of evidence that could be considered for a gang sentencing enhancement. While this conclusion may be correct in light of the statute's plain meaning, *see Lucero*, 127 Nev. at ___, 249 P.3d at 1228, it leaves the district courts in an unenviable position of making decisions that lack any

---

[1]Nor does Elizondo argue that any other provision of NRS Chapter 62H requires the exclusion of these records.

type of direction or standard. As a result, this statute promotes inconsistent and unpredictable applications.

Although I write separately to express my concerns about this standardless statute and the troubling use of other gang members' conduct to prove that a defendant was a member of a gang, I join my colleagues in their disposition of this matter because their ultimate conclusions about the application of NRS 193.168(8)(c) and the other issues presented in the present case are correct.

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A