140 Nev., Advance Opinion 13

IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMEL JACQKEY GIBBS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 83672

FILED

MAR 07 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Tierra Danielle Jones, Judge.

*Reversed and remanded.*

Law Office of Jeannie N. Hua, Inc., and Jeannie N. Hua, Las Vegas, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Taleen R. Pandukht, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE SUPREME COURT, STIGLICH, LEE, and BELL, JJ.

*OPINION*

By the Court, BELL, J.:

While in pretrial detention, Appellant Jamel Jacqkey Gibbs spoke with a defense investigator on a recorded phone line. At trial, the State admitted the recording into evidence over Gibbs's objection that the

24-08180

conversation was privileged. The trial court found that the conversation was not protected by attorney-client privilege because Gibbs violated jail policy by using another detainee's telephone access code and made a three-way call to connect to his investigator. In this opinion, we examine whether the district court erred in finding Gibbs waived the attorney-client privilege. We conclude that a defendant's call to a defense investigator that is routed through a three-way call is, alone, insufficient to establish waiver of the attorney-client privilege absent a showing that the third party remained present during the conversation. Further, we cannot conclude that violation of jail telephone policies operates as a waiver of attorney-client privilege. Accordingly, the district court erred in admitting the recorded phone call. Because the error was not harmless, we reverse the judgment of conviction and remand for further proceedings.[1]

## BACKGROUND

The State charged Jamel Gibbs with fatally shooting Jaylon Tiffith in the driveway of an apartment complex. Gibbs pleaded not guilty to the charges, and the case was set for trial. The record unambiguously reflects that defense counsel planned to focus the defense at trial on mistaken identity and undermine the single witness who identified Gibbs as the shooter.

While in pretrial detention, Gibbs placed several phone calls using another inmate's access code. Gibbs called a third party, who then employed three-way calling to connect Gibbs to the intended receiver.

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal. Further, because we are reversing on the ground stated, we need not decide the remaining issues raised in this appeal.

During one of these calls, Gibbs spoke with a defense investigator and discussed details of the case that indicated Gibbs was present at the time of the shooting. The State moved to admit this recording at trial. Gibbs objected on the basis that the recorded conversation was protected by attorney-client privilege. The district court admitted the recording, concluding that Gibbs waived attorney-client privilege because he violated jail phone policies by using another detainee's access code and using three-way calling.

In addition to this evidence, Tiffith's cousin, Brionta Terrell, identified Gibbs as the shooter after viewing a photograph on social media. Another witness saw the shooting while driving by the apartment complex but was unable to positively identify the shooter.

At the conclusion of the trial, the jury convicted Gibbs of second-degree murder with the use of a deadly weapon. This appeal follows.

## DISCUSSION

*The district court abused its discretion in admitting the recorded phone call between Gibbs and a defense investigator*

Gibbs argues that the district court erred in admitting the recording of the phone call between Gibbs and the defense investigator because the conversation was protected by the attorney-client privilege. Decisions regarding the admission of evidence lie within the district court's discretion and will not be disturbed absent a showing that the district court abused that discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). Such an abuse "occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (internal quotation marks omitted). When the district court's exercise of discretion relies upon findings of fact, those findings "are given deference and will not be set aside

unless they are clearly erroneous or not supported by substantial evidence." *Canarelli v. Eighth Jud. Dist. Ct.*, 136 Nev. 247, 251, 464 P.3d 114, 119 (2020).

The attorney-client privilege protects against disclosure of confidential communications between a defendant and the defendant's attorney or a representative of the attorney. *See* NRS 49.095(1). Confidential communications are "not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services." NRS 49.055. Attorney-client privilege, like all evidentiary privileges, is "not designed or intended to assist the fact-finding process." *Diaz v. Eighth Jud. Dist. Ct.*, 116 Nev. 88, 98, 993 P.2d 50, 57 (2000). Rather, the purpose of this privilege is to "encourage clients to make full disclosures to their attorneys in order to promote the broader public interests of recognizing the importance of fully informed advocacy in the administration of justice." *Wynn Resorts, Ltd. v. Eighth Jud. Dist. Ct.*, 133 Nev. 369, 374, 399 P.3d 334, 341 (2017); *see Diaz*, 116 Nev. at 98, 993 P.2d at 57 (recognizing that evidentiary "privileges are justified by the public's interest in encouraging socially useful communications and by certain notions of legitimate privacy expectations").

For the attorney-client privilege to apply, "the communications must be between an attorney and client, for the purpose of facilitating the rendition of professional legal services, and be confidential." *Wynn Resorts*, 133 Nev. at 374, 399 P.3d at 341. The attorney-client privilege encompasses communications with a representative of the attorney, which, here, would include a defense investigator. *See* NRS 49.055 (recognizing that confidential communications include disclosures to parties necessary to render legal services); NRS 49.085 ("'Representative of the lawyer' means a

person employed by the lawyer to assist in the rendition of professional legal services."); *United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2015) (protecting communications with third party acting as counsel's agent when communications were necessary for advising and defending client), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017). A defendant who asserts a privilege bears the burden of showing that the evidence is privileged and that the defendant has not waived that privilege. *Canarelli*, 136 Nev. at 252, 464 P.3d at 120; *see also United States v. Martin*, 278 F.3d 988, 999-1000 (9th Cir. 2002) (recognizing that a party asserting privilege must "establish all the elements of the privilege," including that it has not been waived); *Louen v. Twedt*, 236 F.R.D. 502, 506 (E.D. Cal. 2006) ("A person asserting attorney-client privilege has the burden of persuasion as to all elements of the privilege, including an affirmative showing of non-waiver . . . ."). The privilege "should be interpreted and applied narrowly." *Canarelli*, 136 Nev. at 252, 464 P.3d at 120 (internal quotation marks omitted).

The district court was persuaded that Gibbs's communications were not privileged, or that he had waived any privilege, because he connected his call to the investigator using three-way calling and violated the detention center's rules by using another inmate's access code. We do not agree.

First, we cannot say that Gibbs's violation of the detention center's rules prohibiting using another inmate's telephone access code resulted in a waiver of the attorney-client privilege. Attorney-client privilege belongs to the client and may only be waived by the client. NRS 49.105(1). The analysis focuses entirely on whether the client intended—either explicitly or implicitly—to waive the attorney-client privilege.

Violation of a jail policy alone does not inform the analysis of whether a defendant intended for an attorney-client conversation to be confidential or whether the privilege is waived.

Second, we cannot conclude, based on the record before us, that use of three-way calling alone resulted in waiver of the attorney-client privilege. Absent a waiver, the communication between Gibbs and the defense investigator was a confidential communication protected by attorney-client privilege. The investigator's role was to assist counsel in preparing a legal defense for Gibbs, and Gibbs's communications with him concerned Gibbs's whereabouts at the time of the shooting, a matter that was material to his defense.

The record does not indicate that the three-way calling method used by Gibbs to communicate with the investigator rendered the conversation nonconfidential. Generally, communications between a client and counsel in the presence of a third party lack confidentiality. *Nev. Tax Comm'n v. Hicks*, 73 Nev. 115, 134, 310 P.2d 852, 862 (1957), *superseded on other grounds by statute as stated in M & R Inv. Co. v. Nev. Gaming Comm'n*, 93 Nev. 35, 35, 559 P.2d 829, 830 (1977). The presence of a third party implies that the client did not intend the communication to be confidential. *See* NRS 49.055 ("A communication is 'confidential' if it is not intended to be disclosed to third persons other than those to whom disclosure is in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication."); *Wardleigh v. Second Jud. Dist. Ct.*, 111 Nev. 345, 353, 891 P.2d 1180, 1185 (1995) (recognizing that the presence of people who were not represented clients indicates an intent that a meeting with counsel is not confidential). Here, though, nothing in the record shows a third party

listened to or participated in the call. Gibbs called a third party who then made a three-way call to connect Gibbs to the investigator. Although a third party was used to connect the call, the transcript of the call does not indicate that the third party listened to or participated in the conversation with the investigator.

No other evidence in the record indicates that the third party remained on the call, either actively listening to the conversation or passively remaining in earshot of the conversation, *see Rogers v. State*, 717 S.E.2d 629, 632 (Ga. 2011) (considering whether evidence showed that third party to attorney-client conference call ceased to listen to call to determine that party's presence); *see also Manley v. State*, 115 Nev. 114, 120, 979 P.2d 703, 707 (1999) (holding that disclosure of some contents of communication between client and counsel operates as waiver of privilege regarding entire communication), as opposed to merely connecting the call and either placing down the handset or disconnecting from the other parties, *see Lisle v. State*, 113 Nev. 679, 701, 941 P.2d 459, 474 (1997) (holding that merely informing third party that communication between client and counsel occurred does not waive privilege regarding conversation), *overruled on other grounds by Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998). Because some telecommunication carriers permit the host of a three-way call to disconnect and leave the remaining parties connected, *see, e.g.*, AT&T, *Use Three-Way Calling*, http://att.com/support/article/u-verse-voice/KM1064301/ (last visited Feb. 21, 2024); Xfinity, *Use the Three-Way Calling Feature with Xfinity Voice*, http://xfinity.com/support/articles/3-way-calling (last visited Feb. 21, 2024), the host may have even completely disconnected after the investigator joined the call.

The district court failed to hold an evidentiary hearing to gather any additional evidence regarding the waiver issue. Given the absence of information in the record, we cannot conclude that substantial evidence supports the district court's finding that Gibbs waived the attorney-client privilege. *See Canarelli*, 136 Nev. at 251, 464 P.3d at 119. Thus, we conclude that the district court abused its discretion in concluding that Gibbs's conversation with the investigator was not protected by the attorney-client privilege.

*The error was not harmless beyond a reasonable doubt*

The State contends that even if the district court abused its discretion in admitting the recorded phone call, that error is harmless. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." NRS 178.598. The error here involves the admission of evidence protected by attorney-client privilege. Because the error intrudes upon the right to counsel, we can conclude that the error was harmless only if the error was harmless beyond a reasonable doubt. *Manley*, 115 Nev. at 121-23, 979 P.2d at 707-09 (evaluating the improper admission of evidence in violation of attorney-client privilege for harmless error under *Chapman v. California*, 386 U.S. 18, 24 (1967)). We cannot conclude the error was harmless beyond a reasonable doubt.

Here, defense counsel planned a mistaken identity defense and planned to undermine the single witness who identified Gibbs as the shooter. No evidence suggested that the witness had met Gibbs before. After the shooting, the witness used social media to help identify Gibbs at the scene, demonstrating a lack of familiarity with Gibbs. While the remaining evidence tying Gibbs to the offense may have been sufficient to

support a conviction, the evidence was not overwhelming. The evidence at trial showed no weapon was recovered that could be matched to the casing left at the scene, the projectile recovered during the autopsy, or the ammunition recovered from Gibbs's girlfriend's apartment. Although the ammunition recovered from the girlfriend's apartment was the same brand and caliber as the casing found at the scene, no forensic evidence was introduced to suggest a more compelling connection. Gibbs's statements to the investigator conceded that Gibbs was present during the shooting. This evidence directly undermined the theory of defense and necessitated a change in strategy at the start of trial; therefore, we cannot conclude beyond a reasonable doubt that its admission was harmless. *See Carr v. State*, 96 Nev. 238, 239-40, 607 P.2d 114, 116 (1980) (concluding that erroneous admission of hearsay that "directly undermined the defense's theory of the case" was not harmless).

## *CONCLUSION*

The district court abused its discretion in admitting a recording of a phone call between Gibbs and his defense investigator. In reaching this determination, we conclude that a jail rule violation in and of itself does not support a finding that the attorney-client privilege was waived. Further, while we agree that the presence of a third party during a conversation may waive the privilege, the limited record here does not support such a finding. Because the conversation was privileged and the admission of the phone

call was not harmless beyond a reasonable doubt, we reverse the judgment of conviction and remand for a new trial.

_____, J.
Bell

We concur:

_____, J.
Stiglich

_____, J.
Lee